THE STATE OF IOWA v. CHARLES DAVENPORT, Appellant.

**Burglary:** EVIDENCE. In this prosecution for burglary, the evidence
1   is held sufficient to support a conviction.

**Same:** BURGLARY ACCOMPANIED BY ASSAULT: EVIDENCE. The evidence
2   in this prosecution tended to show that the defendant obtained a stove poker after entering the house and threw it at one of the occupants of the house; he also removed a ring from the finger of the occupant, and it is held that this evidence was sufficient to authorize submission of the question of whether the offense was not so aggravated as to merit punishment under the provisions of the Code, providing that if one entering a dwelling with burglarious intent shall arm himself with a dangerous weapon, or actually assault a person lawfully therein, he shall be punished by imprisonment for life or any term of years.

**Excessive sentence.** The fact that one convicted of burglary aggra-
3   vated by assault was sentenced for life contrary to the indeterminate sentence law is not ground for interference by the appellate court, as the term of punishment may be regulated by the board of parole.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER, Judge.

FRIDAY, NOVEMBER 18, 1910.

THE defendant was convicted of the crime of burglary and sentenced to imprisonment for life. He appeals.— *Affirmed.*

*J. B. Rush,* for appellant.

*H. W. Byers,* Attorney General, and *Lawrence De Graff,* for the State.

LADD, J.—I. That some person entered the dwelling house of Earl Graham in Des Moines in the evening of January 21, 1909, is not questioned. Was defendant that

1. BURGLARY: evidence.

person? Mrs. Graham testified that she had left the light in the dining room burning and taken her three children upstairs; that two of them had been put to bed, and she had laid the baby across her and was trying to get it to sleep, when, looking up, she saw a colored man at a dresser in the room appropriating a watch and pocketbook therefrom. He came where she was, warned her to keep still, and, seizing her hand, removed a ring from her finger and returned to the room below. A light was on the dresser at the time and had not been turned down. After waiting awhile, she went downstairs, and, as she opened the door, saw him at the sideboard drawers. She screamed, and he threw a stove poker at her, and, as it crashed through a window, left the house. Manifestly the witness had exceptional opportunities for observing the person who committed the offense, and, in view of this, her testimony, positively identifying defendant as such person, was not only sufficient to carry the issue to the jury, but to justify a verdict against him unless discredited or overcome by other evidence in the case. Moreover, her description of the offender, though she had never seen him before, was such that the police immediately began a search for defendant. He denied guilt, but his testimony might have been rejected because of the proof that his general moral character was bad. And he had been convicted of a like felony before. The offense was committed between nine and ten o'clock in the evening, and there was some evidence tending to show that he was then at another place. One McClain testified to having seen the defendant at the Midway saloon, about

a mile distant, at about nine o'clock. Baker swore that he found him there "about ten minutes after nine," and that he was there when he left, which he guessed was "about a quarter to ten." Degrate, an assistant to the bartender, testified he saw him there "just a while before the saloon closed;" did not think it was more than twenty minutes, but did not remember seeing him leave, and would not swear that he was there after half past nine o'clock. No argument is required to demonstrate that this evidence is not conclusive. Even if defendant was at the saloon at nine o'clock, as testified by McClain, he might have reached the scene of the crime in time to have committed it as alleged, while the testimony of the other two witnesses was not at all definite as to time. The evidence in support of the alibi was not convincing, and the entire record was such that the jury might well have concluded that defendant committed the offense.

II.   The evidence tended to show that the accused seized a stove poker when in the bedroom, carried it downstairs, and when Mrs. Graham screamed hurled it at her, and also that he seized her hand and removed a ring therefrom. This, if true, constituted an assault, and the jury might well have found that the stove poker in the manner used was a dangerous weapon. This being so, the court rightly submitted to the jury whether the offense had not been so aggravated by defendant in arming himself with a dangerous weapon, after having entered, or in actually assaulting Mrs. Graham that he should be. punished under section 4788 of the Code, providing that if a person, after burglariously entering a dwelling house, arm himself with a dangerous weapon or actually assault a person lawfully therein, he shall be punished by imprisonment for life or any term. of years.

2. SAME: burglary accompanied by assault: evidence.

III.   The defendant was sentenced to imprisonment in the penitentiary for life, and counsel insist that the

punishment was excessive.    Previously he had served a
jail sentence for the crime of burglary,
having pleaded guilty.    His general moral
character was shown to have been bad.    The
record contains no extenuating circumstance save his youth.
He was but twenty-four years of age, and this circumstance
may well be taken into account by the board of parole in
dealing with him hereafter.    The period of his incarceration
will be measured largely by his future conduct.    While
the sentence was for a definite period contrary to the indeterminate
sentence law (section 5718a13, Code Supp.
1907), this will not interfere with the adjustment of
punishment as prescribed therein.    The case is not one for
the interference by this court.    *State v. Rozeboom,* 145
Iowa, 620; *State v. Duff,* 144 Iowa, 142.—*Affirmed.*

3. SAME:
excessive
sentence.