## COMMONWEALTH vs. ARTHUR L. BARRY.

Worcester.    October 1. — 21, 1878.    AMES & SOULE, JJ., absent.

A., in accordance with a preconcerted plan with B., who had a valise checked at a
railroad station, entered the baggage room of the station, and presenting a check
corresponding with the one on the valise, obtained permission from the baggage
master to place a package in the valise.    While the attention of the baggage mas-
ter was called away by B., A. changed the checks on the valise and a trunk, which
was standing underneath the valise, and immediately passed out of the room.    By
means of this substitution of checks, the trunk was carried to a station other than
that intended by its owner.    B. went on the same train with it, and on arrival at
the station received it, took it with him, and rifled it of its contents.    *Held,* that
A. was guilty of larceny of the trunk and its contents.

INDICTMENT for larceny of a trunk and its contents.

At the trial in the Superior Court, before *Dewey*, J., it was
proved that one Kerr, a travelling salesman from New York,
had caused the trunk in question to be checked at the Union
Station in Worcester, for Hartford, Connecticut, at about half
past four in the afternoon of May 11, and had himself taken a
train leaving at that time, but, as there was not time to load the
trunk, it was retained in the baggage room at Worcester until
the departure of the express train leaving Worcester for Hart-
ford at half past ten at night, when it was put upon the cars and
arrived at New York early on the morning of May 12, with a
New York check upon it; that one Briggs arrived in New
York on the same train, and, with a check corresponding with
the check on the trunk, obtained the trunk and took it to a
hotel; that the trunk was subsequently sent by him to Balti-
more, where it was afterwards found by its owner, rifled of its
contents , and that Briggs was convicted in New York of the
larceny of the trunk and its contents, and was sentenced to the
state prison.

There was also evidence tending to show that Briggs, in com-
pany with the defendant, was at the Union Station in Worcester
on the afternoon and evening of May 11; that Briggs caused a
valise to be checked for New York, which was placed by the
baggage master on the trunk in question ; that the defendant,
according to a preconcerted plan between him and Briggs, got
over the counter at the window of the baggage room where bag-

gage is checked, without permission, and asked the baggage master to permit him to place a package in the valise, showing a check for the same; that he was permitted to do this, and, while he was at the valise and trunk, Briggs called the attention of the baggage master to the window by a question, and the defendant changed the checks on the valise and trunk, and at once left the baggage room through a regular exit. This was all the evidence as to what the defendant did to the trunk at the station.

The defendant requested the judge to give the following instructions : " 1. On the whole evidence, the jury would not be warranted in finding the defendant guilty. 2. If the jury find that all that the defendant did was, according to a preconcerted plan with some person, to change the checks on the trunk and valise, and that the asportation of the trunk and its contents was done by some other person, they cannot convict of larceny. 3. There is no evidence in the case to warrant the jury in finding that the defendant did anything more than to change the checks on the trunk and valise, having previously arranged with some other person so to do. 4. If the jury find that the defendant arranged with Briggs that the former should change the checks on the trunk and valise, and he did so change the checks, and if, in pursuance of the plan, Briggs accompanied the trunk on the same train to New York, and there received the trunk from the railroad company and rifled it of its contents, and there is no evidence which satisfies the jury that the defendant was present with Briggs in New York, and with him received the trunk, they cannot convict."

The judge refused to give these instructions; but instructed the jury that it was necessary and was sufficient, in order to convict the defendant, that they should be satisfied beyond a reasonable doubt " that the defendant, at the railroad station in Worcester, fraudulently and feloniously took the trunk into his temporary possession and control, and while so having it fraudulently, with the intent to continue to have said trunk under his control, and appropriate it to his own use or the use of himself and confederate, fraudulently and feloniously took off the Hartford check from the same, which the railroad company had placed on it, the owner having a corresponding check, and placed thereon a check of the company for New York, whereof he held

a corresponding check which would entitle him to have the trunk transported to New York, and to receive the trunk in New York of the company on its arrival there, and the trunk was carried to New York as the trunk of the defendant, or of which he was entitled to the possession and control, and, by reason of the changed check thereon, the trunk with its contents were, on its arrival at New York, delivered to the defendant or to some person for him."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*W. S. B. Hopkins*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.

LORD, J. We do not understand that the presiding justice intended, by the language used, to instruct the jury that the temporary possession referred to in the instructions was, in itself, an asportation. It does not appear that the question, whether there was an asportation at or before the changing of the checks, was raised at the trial, or that the attention of the court was called to that subject. An asportation at that precise time was unimportant. The real question was, whether the defendant then, feloniously and with intent to steal, set in motion an innocent agency, by which the trunk and contents were to be removed from the possession of the true owner, and put into the defendant's possession, and by means of such agency effected the purpose; and the temporary possession and control, to which the court referred, must be understood to mean such possession and control as enabled the defendant to execute the device by which, through such innocent instrumentality, he should become possessed of the property.

There was evidence tending to show that the defendant and Briggs were acting in pursuance of a common purpose, and that he acts of each were the acts of both; and, inasmuch as no question was raised upon this subject, it is taken to be true, that what one did was the act of both, and that the subsequent actual possession of the trunk by Briggs was the possession of the defendant. It will be seen, therefore, that, by the instructions of the presiding judge, the jury were authorized to find the defendant guilty of larceny, if, in the mode stated, he or his confederate in action obtained possession of the trunk and its contents.

This, as we understand, has been the law from the earliest period : " There is no occasion that the carrying away be by the hand of the party accused, for if he procured an innocent agent to take the property," by means of which he became possessed of it, " he will himself be a principal offender." 3 Chit. Crim. Law, 925. It is held to be a larceny " if a person, intending to steal my horse, take out a replevin, and thereby have the horse delivered to him by the sheriff ; or if one, intending to rifle my goods, get possession from the sheriff, by virtue of a judgment obtained without any, the least color or title, upon false affidavits, &c., in which cases, the making use of legal process is so far from extenuating, that it highly aggravates the offence, by the abuse put on the law, in making it serve the purposes of oppression and injustice." 1 Hawk. *c.* 33, § 12. 1 Hale P. C. 507. *Chissers' case*, T. Raym. 275. *Wilkins' case*, cited in 1 Hawk. *c.* 33, § 22 ; *S. C.* 1 Leach, (4th ed.) 520. It will thus be seen that an asportation may be effected by means of innocent human agency, as well as by mechanical agency, or by the offender's own hand.

The case has been argued as if it was intended by the presiding justice to rule that the jury must find that, at the instant of the exchange of the checks, there was such an actual manual change in the possession as of itself to be an asportation. We do not so understand the instruction. An asportation at that time was unimportant. The real question was, whether the defendant at that time, feloniously and with intent to steal, set in motion an innocent agency, by which the trunk and contents were to be removed from the possession of the true owner, and put into the defendant's possession, and whether such purpose was actually accomplished. If, before the trunk had been started, the scheme had been detected, the offence of the defendant would have been an attempt to commit larceny, and doing an act towards the commission of it, but failing in the perpetration ; but, as soon as the asportation was complete, for however short a distance, the offence of larceny was committed, such asportation having been caused by him, by fraudulent means, and through an innocent agent, unconscious of what, in fact, he was doing. As soon as the trunk was placed on board the cars, checked, with the corresponding check in the possession of the

defendant or his confederate, the trunk and its contents were in the possession and control of the defendant or his confederate, and it is immaterial of which. Nor is the time when the actual manual possession came into the hands of the parties important, they having all the time the constructive possession and the real control of it.

The instructions prayed for by the defendant's counsel were properly refused, because they wholly omitted all reference to the purpose and intent of the defendant in what he did, and all reference to the fact that the defendant was an accomplice of Briggs, or that the actual subsequent possession by Briggs was, or might be, the possession of the defendant. The request to instruct the jury that, upon the whole evidence, they would not be warranted in finding the defendant guilty, was also properly refused. *Exceptions overruled.*