The State of Iowa, Appellee, v. Andrew D. Rozeboom, Appellant.

**Criminal law:** LARCENY: EVIDENCE: PREJUDICE. In the instant prosecution for the larceny of two tubs of butter delivered to a carrier for shipment, by erasing the name of the consignee and placing thereon the name of defendant's consignee, the carrier's shipping bill subsequently made and without the knowledge of defendant was not competent evidence of the question of the number of tubs received by the carrier; but as the objectionable recitals therein were substantially in accord with the testimony of defendant and that of the carrier's agent who drew the shipping bill, there was no prejudice resulting from its admission.

**Corporations:** PROOF OF CORPORATE CAPACITY. Where corporate character is a mere collateral matter not essential to the main case, it may be shown by parol, or by proof that it is acting and doing business as such.

Larceny: ASPORTATION OF PROPERTY.  To constitute larceny there must be an asportation of the property, but it is not essential that the same be so far removed as to be completely and permanently lost to the owner; if the wrongdoer obtains possession of the property of another with felonious intent to deprive the owner thereof, and carries or removes it in the slightest degree from the place where he finds it the crime of larceny has been completed.  Thus where tubs of butter were placed in a car for shipment by another and defendant removed them to another part of the car, with intent to mingle them with tubs of his own and deprive the owner thereof, he was guilty of larceny; and whether in removing the same he actually lifted them from the floor or rolled them along to the new location was immaterial so far as the asportation was concerned.

Same.  And if the defendant in this case erased the name and address of the owner's consignee from the tubs and inserted that of his own consignee, with the view of having the same shipped and delivered to the latter, he made the carrier his agent for the transportation, and the carrying of the same by such agent was a legal asportation.

Excessive sentence: REVIEW ON APPEAL.  The question of an excessive sentence is not for the appellate court, but it is presumed that the board of parole will consider the nature of the offense and all of the reasons, if any, for mitigating the penalty.


*Appeal from O'Brien District Court.*—HON. WM. HUTCHINSON, Judge.


WEDNESDAY, FEBRUARY 9, 1910.


THE defendant was convicted of larceny, and appeals.  The material facts are stated in the opinion.

*J. T. Conn* and *Herrick & Herrick,* for appellant.

*H. W. Byers,* Attorney-General, and *C. W. Lyon,* Assistant Attorney-General, for the State.

WEAVER, J.—Rock Valley and Hartley are stations on the line of the Chicago, Milwaukee & St. Paul Rail-

way. At the time in question it was the custom of the
company on certain specified days to run a refrigerator
car from Rock Valley east through Hartley for the trans-
portation of shipments of butter and eggs to the Chicago,
New York, and other Eastern markets. Among the ship-
pers making use of this convenience were C. H. Day,
doing business at Rock Valley, and Andrew D. Rozeboom,
the defendant herein, doing business at Hartley. Each
shipped butter packed in wooden tubs of the same general
size, shape, and appearance. The direction or address of
the consignees of such shipments was placed upon the tubs
by the use of stencil plates or stamps, or tags, the identity
of the shipper being indicated by a number the significance
of which was known to the consignees. The evidence in
the case was sufficient to justify the jury in finding that
on or about March 25, 1907, Day made a shipment from
Rock Valley, in a refrigerator car, of seventy-seven tubs
of butter, forty-six of which were consigned to the ad-
dress of Gude Bros., New York, such address being placed
upon the cover of each by the use of a stencil plate to-
gether with the shipper's number. This shipment was
deposited in one end of the car, leaving the floor between
the side doors clear and unobstructed. Thus partially
loaded, the car was hauled to Hartley, at which place it
arrived during the night and was placed upon a side track
at a convenient place for receiving shipments in the morn-
ing. At an early hour of the following morning the de-
fendant loaded several tubs of butter from his creamery
and hauled them to the car. The station agent was not
there, but, following what he claims to have been the
custom, defendant proceeded to open the car and trans-
ferred a part of the tubs from his wagon to the car floor
between the doors. It is his contention that he brought
from the creamery to the car six tubs, and in this he is
corroborated by a special agent of the railroad company
who appeared about this time and swears that he saw

the transaction. It is the theory and claim of the state that defendant having placed some of his tubs on the car floor, took other tubs which were a part of Day's shipment, mingled them with his own, and having scraped from the covers the address of Gude Bros., New York, substituted therefor the address of his own correspondents, Merrill & Eldridge, Chicago, Ill. This theory of the defendant's offense has direct support in the testimony of the special agent who claims to have surprised him in the act, and it has corroboration in the testimony of two or three other persons who arrived on the scene immediately afterwards, and swear that pieces of glass and shavings or scrapings of wood were found on the floor, and that several tub covers showed signs of erasures. The defendant's stamp and printing pad for stamping the address of his consignees were also admittedly found in the car or in the wagon just outside of the car door. He denies that he interfered in any manner with any of the tubs except those brought to the car by himself, and says that he was bent over one of his own tubs fastening a cover, which he discovered to be loose or insecure, when he was suddenly and violently assaulted by the railway company's special agent and accused of stealing butter. As we understand the record there were two tubs from Day's shipment on which the state asserts the proper address had been obliterated and the address of defendant's consignees substituted, while other of said tubs had been moved over from their proper place in the car to the place between the doors. The indictment charges defendant with larceny of two tubs of butter of an aggregate value of more than $20, and upon the showing made the jury returned a verdict of guilty. There was other evidence than we have mentioned, but it is circumstantial only, and none of it does more than furnish some degree of corroboration for the respective theories of the prosecution and defense. Whether the defendant did thus feloniously convert or attempt

to convert any portion of Day's shipment to his own use was therefore a fair question for the jury, and its verdict thereon can not be set aside unless the record discloses reversible error in the rulings of the court or in its charge to the jury.

I. The court admitted in evidence a carbon copy of an alleged shipping bill sent, or claimed to have been sent, by the railway company with the butter received by

**1. CRIMINAL LAW: larceny: evidence: prejudice.** it from defendant on the morning of the alleged larceny and forwarded to the consignees. It appears to have been first written describing seven tubs but gives evidence of a change by which the figure 7 has been converted into an 8. The paper also bears a notation as follows, "Two tubs had been rechecked. Shipper claimed he had 7 tubs, only had 6 when he drove over to car as counted by J. Wernick." Wernick was the special agent. About the same time the station agent made a freight receipt to the defendant in which for the carrier he acknowledges receiving from defendant for shipment to Merrill & Eldridge, Chicago, Ill., "6 tubs of butter" but adding thereto a notation as follows, "8 tubs marked Merrill & E. Shipper claimed had 7 tubs. Only 6 brought from creamery as counted by J. Wernick."

We think the paper thus made by the company, after its agent had charged the defendant with the larceny, and without the knowledge of defendant, was not competent evidence, and the objection thereto should have been sustained. But we are unable to see how it could have prejudiced the defense. Defendant claims to have delivered six tubs only, and the writing in question concedes the receipt of six tubs. The statement that there were two more tubs addressed to Merrill & Eldridge, and that defendant claimed to have delivered seven, was only what both the station agent and Wernick had testified to on the stand, and the written statement of the agent to the same

effect can not be presumed to have given their version of the affair any increased weight in the minds of the jury.

II. The indictment charged the larceny to have been from the Chicago, Milwaukee & St. Paul Railway Company, a corporation, and the point is made that there is a

2. CORPORATIONS: proof of corporate capacity.

failure of proof of the corporate character of the company. There was oral evidence by one of the company's agents that the Chicago, Milwaukee & St. Paul Railway Company was a corporation, and this was enough to take the case to the jury. Indeed, we are not prepared to say that an entire omission of all evidence on this point—no objection being raised until after verdict—would constitute any failure of proof requiring a new trial. Where corporate character is a mere collateral matter, not essential to the main question being tried, it may be established by parol proof or by proof that it is acting and doing business as such. *Fleener v. State,* 58 Ark. 98 (23 S. W. 1); *Roberts v. Ice Co.,* 6 Daly (N. Y.) 426; *People v. Ah Sam,* 41 Cal. 645; *Doyle v. Company,* 73 Ill. 273; *Norton v. State,* 74 Ind. 337; *Reed v. State,* 15 Ohio, 217; *Calkins v. State,* 18 Ohio St. 366 (98 Am. Dec. 121); 1 McClain's Criminal Law, section 604; Code of Iowa, section 5286; *State v. Congrove,* 109 Iowa, 66.

III. Counsel appear to base their demand for a reversal very largely on the alleged failure of the state to prove any asportation of the property charged to have been stolen. It will be remembered that the tubs of butter shipped by Day from Rock Valley were shown to have been placed in one end of the car, and it is the theory of the state that defendant removed several of these tubs to the clear floor space between the doors and there altered the address which had been placed on the covers. As applied to this state of facts the defendant asked the court to instruct the jury as follows:

(5) Before you can find the defendant guilty of any degree of crime charged in the indictment you must be satisfied beyond all reasonable doubt that he in fact took and carried away the three tubs of butter mentioned in the indictment, or some of them. While it is not necessary, in order to constitute a taking and carrying away of the property, that the same should have been taken and retained in the possession of the defendant, yet it must be shown beyond all reasonable doubt that the defendant did, in fact, take some or all of said tubs of butter from their original place and position in the car and remove the same completely to another place in said car with the intent of stealing the same, and that in making such removal he did, in fact, lift said tubs or some of them completely clear of the floor of said car or other resting place of the same, and did, for some period of time, at least, so have the same in his complete possession and under his control, and if you do not so find, you must acquit.

(6) You are further instructed that it is not sufficient to constitute such a taking and carrying away as is required by law to make larceny, that the defendant did, if you so find he did, in fact, do, merely roll or slide said tubs of butter or some of them over the floor of said car and so change their position, with intent to steal the same, and if you do not find beyond all reasonable doubt that he did, in fact, lift the same or some of them clear of said floor or other resting place of the same, while so removing them from one position to another, then you must acquit.

These requests were refused, and upon the question thus suggested the court on its own motion charged the jury as follows:

Par. 8. Before you can find the defendant guilty of any degree of the crime charged in the indictment you must be satisfied beyond a reasonable doubt that he in fact took and carried away the three tubs of butter mentioned in the indictment, or some of them. While it is not necessary in order to constitute a taking and carrying away of the property, that the same should have been taken and retained in the possession of the defendant, yet it must be shown beyond a reasonable doubt that the defend-

ant did in fact take some or all of said butter tubs from their original place and position in the car, and remove the same to some extent, with intent on his part to steal the same or some of them, the lifting, shoving, or pushing the same on the bottom of said car in any manner and to any extent would be such moving.

Par. 9.   You are further instructed that if you find that the defendant did in fact remove said tubs of butter, or some of them, from their original place or position in the car, where he found them in the car, and had the same in his possession, and you further find that only a part of said tubs were so removed from their original position and place in said car, then you can not find the defendant guilty except as to the tub or tubs of butter you so find was or were removed from their original position in said car, and taken into possession of the defendant with the intent to steal the same.   The removal of the stamps or address on said tubs, or any of them, and placing the stamp of defendant thereon, being the address of Merrill & Eldridge, if you find defendant did so change stamped address on said tubs, or any of them, with intent to steal the tubs of butter or any of them, is not in law larceny, and will not alone warrant a conviction.

A reading of these quotations will sufficiently indicate the difference between the instructions asked and those given, and we are of the opinion that defendant's assignment of error can not be sustained.   It is true that in order to constitute larceny it must appear that the property was not only stolen and taken by the thief, but also that it was "carried away" by him.   To use the more ancient and technical expression, there can be no larceny without asportation.   But this has never been held to mean that it is essential to a complete larceny that the thief shall so far succeed in removing the property that it is completely and permanently lost to the owner.   If the wrongdoer by trespass obtain complete possession and control of an item of personal property belonging to another with the felonious intent to deprive the owner thereof, and carries it or moves it in the slightest degree from the place where he finds it,

the asportation is complete, and the crime of larceny has been committed. As is very natural, border-line cases have given rise to some very nice distinctions for most of which valid reasons may be given. For instance, where a thief, with intent to steal, picked up a package of goods tied by a string to a merchant's counter but did not succeed in severing the string before he was detected and arrested, it was held the larceny was not complete because the accused never had the goods in his complete possession; but had he broken the string and then dropped the goods, or had been arrested before leaving the store with them, the crime would have been fully consummated. So also, where the accused took a purse from the pocket of another, but did not succeed in carrying it away because of its being fastened by a small chain to the owner's clothing, it was held there was no asportation, and therefore no larceny. On the other hand, where the accused snatched a watch from the pocket of the owner breaking the chain which, in the movement, caught in a button on the owner's coat and was thus saved, it was held to be a case of complete larceny because, in the short interval between the breaking of the chain and the entanglement with the button, the watch had been wholly within the possession of the trespasser. The same rule has been applied where a thief pulled a ring from a lady's ear although the jewel immediately fell from his fingers and lodged in the owner's hair. It has frequently been held that the least removal of the property from the place where the thief finds it, with intent to steal it, is a sufficient asportation. 2 Russel on Crimes, 4; *Harrison v. People*, 50 N. Y. 518 (10 Am. Rep. 517).

Says the West Virginia court in defining a complete larceny: "The property taken must also be carried away. It needs not be retained in the possession of the thief. Any removal, however slight of the entire article, which is not attached to the soil or to any other thing not removed, is sufficient, but nothing short of this will do. Therefore,

if the thief has absolute control of the thing but for an instant and he removes it, ever so little space, the larceny is complete. . . . Upon the question what is a sufficient asportation or carrying away of goods feloniously taken, the authorities, both ancient and modern, uniformly hold that the felony lies in the very first act of removing the property, and therefore the least removing of the thing taken from the place it was in before is a sufficient taking though it be not quite carried off." *State v. Chambers,* 22 W. Va. 779 (46 Am. Rep. 550). The precedents holding to this rule are very numerous. Illustrative examples are found in *Eckels v. State,* 20 Ohio St. 508; *Gettinger v. State,* 13 Neb. 308 (14 N. W. 403); *State v. Gazell,* 30 Mo. 92.

We find no authority which goes to the extent of holding it necessary to complete asportation that the stolen article must be lifted entirely from the ground or floor or other thing on which it rests, provided, of course, there be no unsevered attachment by which such article is bound or fastened to some other thing which is not removed. It is true that as we approach the border line where criminal intent, which of itself is not crime, materializes into an act which is a crime, distinctions are of a necessity somewhat finely drawn, but they always have a basis in sound logic and reason. We are unable to find any support for the rule insisted upon by the appellant. If the tubs of butter shipped from Rock Valley were placed in one end of the car, and appellant took them from such place to the open space in the middle of the car, with the felonious intent to mingle them with his own and thereby deprive the owner of his property, it is entirely immaterial whether he accomplished the removal by lifting and carrying the tubs in his arms, or by rolling or pushing or pulling them along upon the car floor without lifting them clear therefrom.

There is also another theory on which the asportation may be held to have been complete. If the appellant

erased the address from any of the tubs of butter shipped
by Day and replaced it by the address of his
own consignees for the purpose of having the
carrier. transport them to said consignees as his own prop-
erty, he would properly be held to have made the railway
company his agent for such transportation, and the carriage
of the property by such agent would be his act and con-
stitute an asportation within the meaning of the law.   See
*Comm. v. Barry*, 125 Mass. 390.   In the cited case the
changing of a check upon a trunk in the possession of a
railway company, by which device the carrier was induced
to transport the trunk to another city and deliver it to the
wrongdoer or to a confederate, was held to be larceny.   We
regard it very clear that there was no error in refusing the
instructions asked by the appellant or in those given by
the court.

4. SAME.

  Complaint is made that the sentence imposed upon de-
fendant is excessive.   Under our present statute this objec-
tion is probably not one for the consideration of this court.
It is to be presumed that the board of parole,
in exercising the wide discretion given it in
such matters, will take into consideration the
nature of the offense of which conviction has been had, and
all the reasons, if any, for mitigating the extreme penalty
imposed, and. make such order as shall be required by the
real merits of the case.   We find no reversible error in the
record, and the judgment of the district court is *affirmed.*

5. EXCESSIVE
SENTENCE:
review on
appeal.