STATE OF MISSOURI, Respondent, v. OLIVER MARCEL PATTON, Appellant, No. 44186—271 S. W. (2d) 560.

Division One, October 11, 1954.

*Thurman, Nixon & Blackwell* for appellant.

*John M. Dalton,* Attorney General, and *Paul McGhee,* Assistant Attorney General, for respondent.

LOZIER, C.—Defendant has appealed from his conviction and two year sentence for grand larceny. As he filed no brief, we examine the matters previously considered part of the record proper and the allegations of error in defendant's new trial motion. State v. Campbell, (Mo.) 262 S. W. 2d 5, 6[1]; Supreme Court Rule 28.02.

The indictment was sufficient, defendant was personally present throughout the proceedings, the verdict was in proper form, the judgment and sentence were responsive to the verdict, and allocution was granted. Secs. 560.155, 560.160 (all section references are to RSMo 1949, V.A.M.S.), Supreme Court Rules 29.01, 27.08 and 27.09. The failure of the record to show arraignment is not reversible error. This, because the record shows that the trial court appointed counsel for defendant and that defendant went to trial without objection and was tried as if he had been arraigned and had pleaded not guilty. Supreme Court Rule 25.04; State v. Weed, 271 S. W. 2d 557.

The allegations of error in defendant's new trial motion were: The state failed to make a submissible case as to asportation; error in the giving of two instructions, in the refusal of another and in the admission of certain evidence.

Defendant was tried upon an information under Sec. 560.155 charging that he "unlawfully and feloniously did steal, take and carry away with the intent to deprive the owner of the use thereof and to convert the same to his own use," 465 concrete building blocks of the value of $97.00, the personal property of Irvin S. DeWoskin.

DeWoskin testified that he resided in St. Louis County; that in 1952 he purchased 487 concrete building blocks and had them delivered to his farm in Jefferson County. He used some of them in constructing a barbecue pit. In August, 1953, he discovered that most of the others, worth between $85.00 and $97.00, were missing. They were all there two or three weeks before. He later found them on the farm of Andy

Weisner, 5 or 6 miles away. Defendant's parents told him "where they were."

Defendant's parents lived on the DeWoskin farm. "They were free to live on the place and use the land for livestock and raise their little produce if they wished." DeWoskin knew defendant "casually" but did not know whether defendant lived on the farm (the jury could have reasonably inferred that he did). DeWoskin had no conversation with defendant regarding the blocks.

Mrs. Ann Weisner, Andy Weisner's mother, testified that she had not known defendant before he came to her home in August, 1953, and asked for Andy. Defendant told her that "he had some chickens and stuff he wanted to sell, he thought maybe they would want to buy them. I said, 'No, I have plenty of my own.' * * * He said he had some nice ones, that he had to get rid of them." Defendant's counsel objected to the conversation about the chickens as "immaterial to this charge." The court agreed that that part of the conversation had "no bearing at the moment, I assume they are going to get down to something that is material. * * * Let's get on to the second day, about the concrete blocks." Defendant's counsel then asked that the jury be instructed "to disregard all of the voluntary statements of the witness. The Court: It is all part of the conversation. * * * Q. Now, the next day did you have any conversation with the defendant here concerning concrete blocks? A. Yes, and also the geese and the ducks—." To defendant's counsel's objection, the court stated: "There isn't any charge here about chickens and geese. It can't hurt anything. Now (to the witness), answer the question, please, did he talk to you about concrete blocks the following day? A. The same day he did. The following day he talked to me about geese, turkeys and blocks." Defendant's counsel's objection was overruled, the court telling the witness, "Go ahead, just tell the conversation."

The substance of the conversation the second day was: Defendant asked who was building on the place across the road from the Weisner home. Mrs. Weisner replied that her son Andy was. Defendant asked if Andy had any building blocks. She said he "had them ordered." Defendant said, "Well, I have blocks. I have 300 over at the house and 200 more at the factory. * * * They haven't delivered them yet, but I will call them up if you want to buy them and have them delivered at your place." Defendant said that Andy "is giving 18¢ and I will take 15¢ for mine." She said "all right" and paid him $10, and "told him to come back and see Andy." Defendant said he had some cement that Andy could have free. Asked if defendant gave his reason for selling the blocks, Mrs. Weisner said: "He said he was selling everything because he had those two farms and couldn't take care of both farms, had to get rid of this stuff * * * and he was selling" the blocks.

The next day defendant came to the Weisner home and Andy paid him $35. After defendant's arrest, Mrs. Weisner agreed to buy the blocks from DeWoskin "instead of him hauling them off."

Andy Weisner testified that he had known defendant and first talked to him about the blocks at the Weisner home. "He made known that he had some blocks for sale. * * * He wanted to sell them to me for 15¢ apiece. * * * He said I could buy the blocks off of him, that he would have 300 blocks there on the place and that he had 200 more ordered. * * * He said if I bought the blocks he would have those (the 200) delivered to my place. * * * We agreed on the price and I paid him." Andy paid defendant $35. "I didn't have all the money with me. He promised to come back after the rest. * * * I was going to pay him for the whole 500." Defendant told Andy where the 300 blocks were; "I later learned it was the DeWoskin farm." Defendant told Andy where the farm was located. "He said he wouldn't be home when I went to get them * * * but that it would be all right for me to go get them. * * * He said there should be 300 there. * * * They are scattered all over." Sometime later, Andy and his brother went with defendant to the DeWoskin farm where defendant pointed out the blocks. Thereafter, Andy returned to the farm and supervised the loading of about 260 blocks and had them trucked to his farm.

Deputy Sheriff Marsden testified that, after defendant's arrest, he (defendant) told Marsden several times that "he sold the blocks but he didn't deliver them."

■ Defendant offered no evidence. At the close of the state's case, defendant's motion for judgment of acquittal was overruled. In that motion, and as the first allegation of error in his new trial motion, defendant urged that the state had "failed to prove by substantial evidence that defendant was guilty of taking and carrying away the concrete blocks; * * * that proof of asportation is essential to a conviction of grand larceny."

"There is a division of authority on the legal question of whether or not the selling of property by a person, who did not own it, to an innocent party, who, without any criminal intent or purpose, removes it from the possession of the owner, unassisted and unaccompanied by the seller, is larceny or theft on the part of the seller. Some cases hold that while a fraud has been committed, the seller is not guilty of larceny or theft, because the essential element of asportation is lacking, the seller not having obtained actual or constructive possession of the alleged stolen property. People v. Gillis, 1889, 6 Utah 84, 21 P. 404; Ridgell v. State, 1914, 110 Ark. 606, 162 S. W. 773; ■ Henderson v. State, 1906, 79 Ark. 333, 96 S. W. 359, 10 LRA (NS) 816.

"On the other hand, under similar or identical facts in other jurisdictions, the courts reached the conclusion that theft or larceny

was complete on the theory that the bona fide purchaser, who removed the alleged stolen property, was the innocent agent of the seller. State v. Hunt, 1877, 45 Iowa 673, Cummings v. Comm., 1883, 5 Ky. Law Rep. 200; Scott v. State, 1939, 138 Fla. 568, 189 So. 661; Long v. State, 1902, 44 Fla. 134, 32 So. 870, 14 Am. Crim. Rep. 453; Smith v. State, 1912, 11 Ga. App. 197, 74 S. E. 1093.'' State v. Laborde, 202 La. 59, 11 So. 2d 404, 407[4], 144 A.L.R. 1376. See also Annos., 144 A.L.R. 1383, 1384, 19 A.L.R. 724, 725.

The majority rule is ''that there may be a sufficient asportation where the alleged thief, fraudulently representing himself to be the owner, points out and sells another's property to a purchaser, provided such purchaser takes it away.'' 32 Am. Jur., Larceny, Sec. 20, p. 905. And see 52 C.J.S., Larceny, Sec. 7, p. 806.

Apparently, this precise question (carrying away by an innocent purchaser) has not been ruled by any Missouri appellate court. However, this court has approved the ''innocent agent'' theory in a case wherein, by the defendant's direction, the goods were moved by an innocent teamster and delivered to the defendant.

In State v. Mintz, 189 Mo. 268, 88 S. W. 12, the defendant hired Rector to go to a railroad station and pick up property of another. The railroad delivered the property to Rector who then delivered it to defendant. The state's evidence was ''undisputed that the witness Rector was the instrument selected by the defendant to accomplish his fraudulent and felonious intent of stealing the property * * * and permanently depriving the owner of it. He furnished the wagon, directed Rector how to proceed in order to obtain this property, and * * * the felonious intent and design entertained by the defendant * * * is made too clear for discussion. Whatever was done by Rector must be treated as the act of this defendant, and, even though Rector's mind was inactive, and he was ignorant of the purposes of his act, if defendant, Mintz, directed the act to be done, and had the felonious intent of stealing the property and converting it to his own use through the act of his instrument, Rector, then the act of Rector and the intention of the defendant, Mintz, should be brought together, and the commission of the act must be treated as though it was executed by the defendant, who directed it. In other words, if defendant, Mintz, entertained the felonious intent and design of stealing this property, and directed Rector to do such acts as would result in obtaining the property, without informing Rector as to his intent, and by reason of the commission of the act by Rector the property is obtained and converted by the defendant, Mintz, to his own use, we are unwilling to say that this would not constitute larceny on the part of the defendant, Mintz. If Rector had no design or intent to steal the property obtained by him at the time of taking such property, and he was simply, as claimed by appellant, carrying out the purposes of the defendant, Mintz, without any information as to what

Mintz's purposes were, then there is no difference in principle in the use of Rector by the defendant as an instrument to remove the property from the possession of the owner, and in using any inanimate instrument in reaching out—such as tongs, pincers, or other instruments—to remove the property sought to be stolen from its location. The defendant, Mintz, having directed Rector in the commission of the act of taking the property, it must be held that the intent of defendant, Mintz, accompanied Rector in the commission of such act." 88 S. W. 20.

We believe that the same principle is applicable to the carrying away by an innocent purchaser. In State v. Laborde, supra, the court held that such purchaser took and carried away the property "in his capacity as the purchaser and owner thereof"; that, as the seller "at no time had the actual or constructive possession of the animal, the act of the purchaser in carrying it away for his own account cannot be said in legal contemplation to have been the act of the seller." 11 So. 2d 409[5]. But in State v. Hunt, supra, it was said: "But defendant asserted his ownership and claimed the possession by the sale. And further, he authorized the butcher to take the steer from the pound. This was a sufficient 'taking,' and as it was done under defendant's authority, it must be regarded as his act." 45 Iowa 675.

And, it would seem that the carrying away by the purchaser need not have been with felonious intent on *his* part and that whether he acted as the seller's agent in moving the property should not turn upon his (the purchaser's) good faith. One who does not purchase in good faith is obviously the seller's agent and the movement by him is asportation by the seller. Thus, if instant defendant had told Andy that the blocks were DeWoskin's, or if Andy had otherwise known that they were, Andy's movement of the blocks would have constituted asportation by defendant. (The same would be true if Andy, with knowledge that the cement was DeWoskin's, had removed the cement defendant had told him he could have.) And see State v. Parker, 324 Mo. 734, 24 S. W. 2d 1023, 1026[11], wherein the defendant hired others to burglarize a store and carry away the property.

In our view, an innocent purchaser is as much the seller's agent as one who purchases with knowledge that the property is not the seller's; and movement of the property by the former is as much an asportation by the seller himself as movement by the latter. The movement in both instances is by direction of the seller. The only difference is that, in performing the act, in one instance the purchaser believes that the seller is or was the owner of the property he proposes to sell or has sold, and the purchaser performs the act of moving the property in the belief that he has acquired ownership thereof. The essential factor is his act in moving the property by

direction of the seller—not his intent in performing that act. We hold that Andy, the instant innocent purchaser, acted as defendant's agent when he moved the blocks and that such movement constituted asportation by defendant. State v. Mintz, supra.

Defendant next alleged that the trial court erred in giving the state's Instruction 1 and in refusing to give his requested Instruction A. Instruction A would have required the jury to find, inter alia, that "defendant wrongfully took hold of the concrete blocks * * * and wrongfully carried or aided and assisted anyone in carrying the same away." Our hereinbefore ruling as to the submissibility of the state's case disposes, adversely to defendant, of his contention that the trial court erred in refusing to submit defendant's theory that there was no asportation by defendant. And compare the instruction held properly refused in State v. Mintz, supra, 88 S. W. 20. It follows that Instruction 1 (requiring the jury to find that defendant "feloniously did steal, take and carry away" the blocks) was properly given.

Instruction 1 also hypothesized that the felonious taking and carrying away by defendant was "without honest claim thereto, with the intention of converting the same to his own use *or* permanently depriving the owner of his property therein." (Our italics.) Defendant alleged that this portion of the instruction "allowed the jury a roving commission to determine whether the property was converted to defendant's own use or the intent was to permanently deprive the owner of his property * * * and there was not any evidence to support both of the two alternatives." However, our hereinbefore summary of the evidence shows that there was substantial evidence of both "alternatives." Furthermore, Instruction 2 included in the definition of larceny a "felonious intent to convert the same to some use of the taker * * * *and* * * * deprive the owner of such property permanently." (Our italics.) The instructions must be read together. State v. Evans, (Mo.) 237 S. W. 2d 149, 152[6].

And, in our opinion, the use of the disjunctive in Instruction 1 could not have been prejudicial to defendant. See State v. Harris, 357 Mo. 1119, 212 S. W. 2d 426, 429[7, 8].

The state's Instruction 2 required the jury to find, inter alia, that defendant, "either acting alone or jointly with another person, unlawfully and fraudulently removed said property" etc. Defendant alleged that the instruction was erroneous "in that the court is instructing the jury that they have a right to find that some other person aided or assisted defendant in the commission of the crime when there was no charge or evidence of any type which showed any joint criminal act or anybody assisting the defendant."

The contention is without merit. The gist of the particular finding required in Instruction 2 is that defendant "unlawfully and fraudulently removed said property." As the evidence was that defendant

acted through an innocent purchaser, the phrase "either acting alone or jointly with another person," was pure surplusage and, under the instant circumstances, could not have been prejudicial to defendant.

■ Defendant's final allegation of error was the trial court's refusal to instruct the jury to disregard the "voluntary, incompetent and prejudicial statements made by Mrs. Weisner" as to "other allegedly criminal acts not covered in the information in this case." Assuming without deciding that such was a sufficient allegation of error under Sec. 547.030 and Supreme Court Rule 27.20, the trial judge properly overruled defendant's request that the jury be instructed to "disregard all of the voluntary statements of the witness." The testimony of Mrs. Weisner to which defendant refers has been quoted herein. It is quite apparent that Mrs. Weisner was trying to relate in detail the two conversations she had with defendant. Her voluntary statements that they talked about "chickens, geese and ducks" as well as concrete blocks were not material. However, as the trial court pointed out, "it is all part of the conversation" and "there isn't any charge here about chickens and geese. It can't hurt anything."

As the evidence supports the conviction and there is no reversible error, we affirm the judgment and direct that defendant's sentence be executed. *Van Osdol* and *Coil, CC.*, concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.