2011 WY 114

**Ronald Kirby JONES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–10–0239.

Supreme Court of Wyoming.

July 26, 2011.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul

S. Rehurek, Senior Assistant Attorney General. Argument by Mr. Rehurek.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Ronald Kirby Jones, appeals his conviction of felony larceny in violation of Wyo. Stat. Ann. § 6–3–402(a). He challenges the district court's subject matter jurisdiction and contends that the district court erred in instructing the jury as to the elements of larceny. He also asserts there was insufficient evidence to support his conviction. We conclude that the jury instructions were inadequate, and, as a result, we reverse and remand for a new trial.

## ISSUES

[¶ 2] Appellant raises four issues, which we discuss in the following order:

1. Did the district court obtain subject matter jurisdiction over the State's larceny charge under W.S. § 6–3–402(a) when the affidavit of probable cause alleged facts indicating a violation of W.S. § 6–3–402(b), which defines the crime of larceny by bailee?

2. Did the trial court improperly instruct the jury?

3. Did the prosecution provide sufficient evidence to support the elements of caption and asportation?

4. Did the trial court abuse its discretion in refusing to allow the defense to examine the prosecution's expert witness regarding his prior felony convictions?

## FACTS

[¶ 3] Appellant rented a mechanic's shop jointly with an acquaintance in Gillette, Wyoming. Appellant and his cotenant both worked on cars at the shop, and each had a separate area outside the shop where they stored vehicles. Sometime in the summer of 2006, Appellant's cotenant allowed Corey, the owner of a 1968 Dodge Charger, to store his car in the cotenant's area of the shop grounds. Approximately a year later, the cotenant moved from Gillette and no longer rented the shop with Appellant. Corey testified that in early 2008, after the cotenant had moved away, Appellant told him that he could continue to store his car at the shop. Corey testified that he talked to Appellant again sometime in late 2008 or early 2009, and Appellant again told him that he could continue to store his car there. Corey did not pay Appellant to store his car at the shop.

[¶ 4] From 2006 to May, 2009, Corey went to the shop approximately six times to check on his car and to store replacement parts inside the car. In addition, Corey periodically drove by the shop to make sure the car was still there. In June, 2009, Corey drove by the shop and noticed that his car was missing from the spot where it had been parked for the last several years. He testified that when he checked with Appellant, Appellant told him that he thought Corey had taken the car away. According to Appellant, however, he first met Corey when he came to inquire about his missing car. Appellant further testified that he had never spoken to Corey about storing his car at the shop. On June 19, 2009, after checking with several of his friends to see if they had heard anything about his car, Corey reported to the Sheriff's office that the car had been stolen.

[¶ 5] A little over a month later, the vehicle was located when Mark, a resident of Gillette who restored old cars as a hobby, called the Sheriff's office to request a vehicle identification number check on a car in his possession that he thought might be stolen. Mark had obtained the vehicle from Appellant. He testified that in May, 2009, after learning that the vehicle was sitting at Appellant's shop, he spoke with Appellant about buying the car. Appellant told Mark that the car had been abandoned. He informed Mark that he did not own the car and did not have title. Mark offered to buy the car anyway, and the parties agreed to a purchase price of $2,000.00. Mark returned to the shop a week later and paid Appellant $1,000.00 in cash. No bill of sale, receipt, or other paperwork was exchanged. The following week, Mark, his nephew, and his nephew's roommate went to the shop and

loaded the car onto a trailer. Appellant arrived at the shop as they were loading the car and was paid the remaining $1,000.00. Mark subsequently towed the car to his house, and his nephew began stripping the car a few days later.

[¶ 6] Appellant was charged with felony larceny under Wyo. Stat. Ann. § 6–3–402(a). After a two-day jury trial, he was found guilty. He was sentenced to a prison term of two to five years, which was suspended in favor of five years of supervised probation. This appeal followed.

## DISCUSSION

### Subject Matter Jurisdiction

[¶ 7] In his first argument, Appellant contends the district court lacked subject matter jurisdiction over the offense as charged. Whether a court has subject matter jurisdiction is a question of law, which we review de novo. Hoffman v. Darnell, 2011 WY 65, ¶ 7, 252 P.3d 936, 938 (Wyo.2011). Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong. Fuller v. State, 568 P.2d 900, 902–03 (Wyo. 1977). District courts in Wyoming have jurisdiction over all criminal cases except those for which other provision is made. Id. at 902, citing Article 5, § 10, Wyoming Constitution. A determination as to whether subject matter jurisdiction over the offense exists is made by looking at the face of the charging document. Messer v. State, 2004 WY 98, ¶ 15, 96 P.3d 12, 17 (Wyo.2004). An information is sufficient if it is "in the words of the statute." See, e.g., Spagner v. State, 2009 WY 12, ¶ 11, 200 P.3d 793, 799 (Wyo. 2009). As we stated in Spagner, "[a]n information is required to set forth only 'ultimate facts,' as opposed to 'matters of evidence,' the latter phrase meaning 'particulars as to manner or means, place or circumstance.'" Id., quoting Crouse v. State, 384 P.2d 321, 325 (Wyo.1963).

[¶ 8] Appellant claims that the district court lacked subject matter jurisdiction because the facts alleged in the affidavit of probable cause did not support a violation of Wyo. Stat. Ann. § 6–3–402(a), as alleged in the State's Felony Information. According to Appellant, the facts alleged in the affidavit of probable cause did not establish that Appellant "took" or "carried" the property of another as required by Wyo. Stat. Ann. § 6–3–402(a).[1] Appellant contends that, as a result, the district court failed to acquire subject matter jurisdiction over the offense.

[¶ 9] Wyo. Stat. Ann. § 6–3–402 (LexisNexis 2009) states, in relevant part, as follows:

§ 6–3–402. Larceny; livestock rustling; theft of fuel; penalties.

(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

The Felony Information filed by the State alleged that Appellant "did steal, take and carry away property of another with the intent to deprive the owner or lawful possessor of that property," which is consistent with the language of Section 402(a). Applying the rule that subject matter jurisdiction is determined from the face of the charging documents, the district court had subject matter jurisdiction over the offense because the charging documents set forth the elements of the alleged crime. See Messer, ¶ 16, 96 P.3d at 17.

### Jury Instructions

[¶ 10] In Appellant's second issue, he contends the district court did not properly instruct the jury as to the elements of larceny. As set forth above, Wyo. Stat. Ann. § 6–3–402(a) provides that "[a] person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty

---

1. The facts set forth in the affidavit of probable cause indicated that Mark, the purchaser, took and carried Corey's car. According to Appellant, these facts are consistent with a charge of larceny by bailee under Wyo. Stat. Ann. § 6–3–402(b), as opposed to ordinary larceny under Wyo. Stat. Ann. § 6–3–402(a), because Appellant did not personally take or carry away the property of another. We address this issue in our discussion of whether the evidence was sufficient to support Appellant's conviction. See infra, ¶¶ 19–25.

of larceny." The district court gave the following elements instruction:

INSTRUCTION NO. 12

The necessary elements of the crime of Larceny, as charged in this case, are:

1. Between May 1, 2009 and June 18, 2009;
2. In Campbell County, Wyoming;
3. The Defendant, Ronald Kirby Jones;
4. *Did steal;*
5. Property of another;
6. Of a value of $1,000.00 or more;
7. With intent to deprive the owner or lawful possessor of said property.

(Emphasis added.) On appeal, Appellant argues that the jury instructions were inadequate because they omitted any reference to "taking" and "carrying" the property of another. At trial, however, Appellant did not object to the instruction. As a result, we review for plain error. *Granzer v. State,* 2008 WY 118, ¶ 19, 193 P.3d 266, 272 (Wyo. 2008).

[¶ 11] Jury instructions are "designed to inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts." *Reilly v. State,* 2002 WY 156, ¶ 16, 55 P.3d 1259, 1265 (Wyo.2002), quoting *Brown v. State,* 817 P.2d 429, 439 (Wyo.1991). "Given this purpose, the test whether the jury has been instructed on the necessary elements of the crime charged is whether the instruction 'leaves no doubt as to under what circumstances the crime can be found to have been committed.'" *Reilly,* ¶ 16, 55 P.3d at 1265, quoting *Miller v. State,* 904 P.2d 344, 348 (Wyo.1995). We have previously recognized that "taking" and "carrying" are elements of larceny. *Mendicoa v. State,* 771 P.2d 1240 (Wyo.1989). The State concedes that "taking" and "carrying" are elements of larceny, and that these elements were omitted from the jury instructions. When an element of a crime is omitted from the jury instructions, we must determine whether the error was prejudicial. *Granzer,* ¶ 19, 193 P.3d at 272.

[¶ 12] In *Granzer,* we addressed the issue of whether the failure to instruct the jury on an element of a crime requires reversal of an appellant's conviction. We noted that, under prior precedent, a trial court's omission of an element from the jury instructions was considered a "fundamental error" requiring reversal. *Id.,* ¶ 10, 193 P.3d at 269, citing *Lapp v. State,* 2004 WY 142, ¶ 10, 100 P.3d 862, 865 (Wyo.2004); *Reilly,* ¶ 20, 55 P.3d at 1267; *see also Butz v. State,* 2007 WY 152, ¶ 18, 167 P.3d 650, 655 (Wyo.2007); *Heywood v. State,* 2007 WY 149, ¶ 26, 170 P.3d 1227, 1234 (Wyo. 2007); *Leyva v. State,* 2005 WY 22, ¶ 8, 106 P.3d 873, 876 (Wyo.2005); *Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo. 2001); *Schmidt v. State,* 2001 WY 73, ¶ 23, 29 P.3d 76, 83 (Wyo.2001); *Metzger v. State,* 4 P.3d 901, 908 (Wyo.2000); *Compton v. State,* 931 P.2d 936, 940 (Wyo.1997); *Miller,* 904 P.2d at 348; *Vigil v. State,* 859 P.2d 659, 662 (Wyo.1993). In *Vigil,* we reversed Appellant's manslaughter conviction because the jury instructions failed to include an essential element of the crime. *Id.* We said that "Vigil, as the accused in a criminal prosecution, can only be convicted upon proof beyond a reasonable doubt of each element of the crime charged." *Id.,* citing *Stuebgen v. State,* 548 P.2d 870, 879 (Wyo.1976); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

[¶ 13] In *Granzer,* however, we also noted that our prior decisions did not clearly explain the meaning or effect of finding a "fundamental error." *Granzer,* ¶ 13, 193 P.3d at 270. We noted that certain cases identifying the omission of an element of a crime from the jury instructions as a fundamental error also indicated that a defendant who does not object to the instructions must show prejudice in order to warrant reversal of the conviction. *Id.,* ¶ 14, 193 P.3d at 271, citing *Miller,* 904 P.2d at 349. Our decision went on to explain that, since *Vigil,* the United States Supreme Court had provided "more definitive guidance on whether reversal is warranted any time the trial court fails to instruct the jury on an essential element of a crime." *Granzer,* ¶ 15, 193 P.3d at 271. We noted that in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the U.S. Supreme Court determined that "an error in failing to instruct the jury on an essential element of an offense is not part of

the limited class of fundamental constitutional errors 'so intrinsically harmful as to require automatic reversal (i.e. affect substantial rights) without regard to their effect on the outcome.' " *Id.*, quoting *Neder*, 527 U.S. at 7, 119 S.Ct. at 1833.

[¶ 14] Ultimately, following the decision in *Neder*, we held that a trial court's failure to instruct on an element of a crime is not a fundamental error requiring automatic reversal, but rather a trial-type error subject to harmless error analysis. *Granzer*, ¶ 18, 193 P.3d at 271–72. Further, we held that in the absence of a proper objection the plain error standard of review applies. *Id.*, ¶ 19, 193 P.3d at 272. Under the plain error standard, "failure to instruct on an essential element is not reversible if the element was not contested or 'where evidence of the defendant's guilt is overwhelming' because, under those circumstances, the defendant suffers no prejudice from the violation." *Id.*, ¶ 21, 193 P.3d at 272, quoting *Miller*, 904 P.2d at 349. We note, however, that there will be few instances in which these criteria are met, and it will be the rare case in which the omission of an element of a crime from the jury instructions does not cause prejudice to the defendant.

[¶ 15] To demonstrate plain error, an appellant must show: 1) the record clearly reflects the incident urged as error; 2) a violation of a clear and unequivocal rule of law; and 3) that the appellant was materially prejudiced by the denial of a substantial right. *Causey v. State*, 2009 WY 111, ¶ 18, 215 P.3d 287, 293 (Wyo.2009). The first prong of plain error analysis is satisfied in this case because the record clearly reflects that the elements of taking and carrying were omitted from the jury instructions. Further, the State concedes that "[i]t is well settled that Wyoming's larceny statute ... requires proof of both caption and asportation." Failure to include these elements in the instructions violated a clear and unequivocal rule of law. *Vigil*, 859 P.2d at 662; *see also In re Winship*, 397 U.S. at 361, 90 S.Ct. at 1071. We next determine, under the third prong of the plain error test, whether Appellant was materially prejudiced.

[¶ 16] In determining whether the omission of the taking and carrying elements from the jury instructions was prejudicial, we are guided by the analysis provided in *Granzer*. Under the facts of that case, the defendant was convicted of endangering her lodger's child by knowingly and willfully allowing the child to enter and remain in a dwelling where the defendant knew methamphetamine was stored. *Id.*, ¶ 1, 193 P.3d at 268. The jury instructions listed as a necessary element of child endangerment that the defendant allowed the child to "*remain* in a dwelling." *Id.*, ¶ 6, 193 P.3d at 269 (emphasis in original). The instructions made no reference to allowing the child to *enter* a dwelling. We proceeded to determine whether omission of the "enter" element caused prejudice to the defendant. We noted that testimony of the defendant's lodger indicated that the defendant was not at her home when the lodger's child arrived. *Id.*, ¶ 22, 193 P.3d at 272. Statements by the defendant's children, however, were inconsistent with the lodger's testimony. *Id.* In light of the disputed evidence as to whether the defendant was at home at the time the child entered the dwelling, we determined that the defendant was entitled to a jury determination on the "enter" element. *Id.* We concluded that the defendant was materially prejudiced by the instructional error, and that she was entitled to a new trial. *Id.*

[¶ 17] Similarly, in this case, we find that the failure to include the elements of taking and carrying in the jury instructions caused material prejudice to Appellant. First, Appellant contested these elements at trial. He denied that he participated in the sale of Corey's car in any way. The State acknowledges as much in its brief, where it states that Appellant's defense was simply to "deny that he sold the car to anyone and [to claim that he] did not know how it left his property." According to Appellant, he thought the car had been abandoned by his cotenant when he moved from Gillette. Appellant testified that he never spoke with Corey about storing his car at the shop and that he first learned that Corey owned the car when Corey told him it was missing. The fact that the State did not produce any evidence that Appellant personally "took" or

"carried" the property of another is further indication that the failure to include the taking and carrying elements in the jury instructions was prejudicial.[2] Consequently, the jury instructions failed to "inform the jury about the applicable law," and, as a result, the jury was unable to "apply that law to its own findings with respect to the material facts.'" *Reilly*, ¶ 16, 55 P.3d at 1265.

[¶ 18] With regard to the second criteria for determining whether prejudice to the defendant was material, we cannot conclude that the evidence of Appellant's guilt is overwhelming. The only evidence that Appellant was aware that the car was owned by Corey was contained in Corey's trial testimony. Corey kept his car at the shop for at least three years, but he acknowledged that he did not pay Appellant to store his car there. Appellant, for his part, denied knowing that Corey owned the car, and denied that Corey had inquired about storing his car at the shop. Although the trial testimony of other fact witnesses raised questions about Appellant's credibility, we are unable to say that the evidence of Appellant's guilt is so "overwhelming" as to excuse the failure to instruct the jury as to the elements of the crime. The failure to include the taking and carrying elements of larceny in the jury instructions was plain error, and requires reversal.

### Sufficiency of the Evidence

[¶ 19] In Appellant's third issue, he claims that the evidence at trial was insufficient to sustain his conviction. Although we reverse on the jury instruction issue, we must also determine whether the evidence was sufficient to convict Appellant because, if the evidence was insufficient as a matter of law, Appellant is entitled to be acquitted on the charge, and the State may not re-try him. *Granzer*, ¶ 23, 193 P.3d at 272. The standard of review when determining whether the evidence was sufficient to support a conviction is stated as follows:

> In reviewing the sufficiency of the evidence ..., we examine and accept as true the State's evidence and all reasonable infer-

ences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Anderson v. State*, 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo.2009).

[¶ 20] Appellant asserts that there was no evidence that he "took" or "carried" Corey's vehicle. He contends that, absent such proof, he cannot be convicted of larceny. He argues that the taking element is contradicted by the undisputed evidence that Corey delivered the car to Appellant's rented property. Further, Appellant argues that the carrying element was not met because there was no evidence that Appellant assisted in hauling the car away. Appellant's arguments suggest that the elements of "taking" and "carrying" can be satisfied only if he had some physical contact with the property. He contends that the evidence, when viewed in the light most favorable to the State, may have been sufficient to establish larceny by bailee under Wyo. Stat. Ann. § 6–3–402(b), but not ordinary larceny.

[¶ 21] As noted above, the State concedes that Wyoming's larceny statute requires proof of both a taking, or "caption," and a carrying away, or "asportation," of the property of another. Both parties cite to language from our decision in *Mendicoa*, 771 P.2d 1240:

> In *Murdock v. State*, 351 P.2d 674 (Wyo. 1960), the defendant was charged with stealing sheep. We stated in *Murdock* that, in order to support a conviction, "there must be a definite showing that defendant performed some act of taking, an asportation, or that he caused or procured [an accomplice] to perform such act; and that he must have done so with the intent to steal." *Id.* at 678. *See also* 3 C. Torcia, Wharton's Criminal Law § 369

---

2. The jury was never instructed that an innocent agent's taking and carrying could be attributed to Appellant, as discussed *infra*, at ¶¶ 22, 23.

(14th ed. 1980) (larceny requires a taking or caption and carrying away or asportation of the property of another). *Id.* at 1243–44. The elements of taking and carrying were included in the common law definition of larceny, and we have recognized that the larceny statute contains "substantially the same basic elements as were required at common law." *McCarty v. State,* 616 P.2d 782, 785 (Wyo.1980); 2 W. Blackstone, Commentaries, Book IV, ch. 17, *229–232.

[¶ 22] The evidence, when considered in the light most favorable to the State, indicates that Appellant knew Corey owned the 1968 Dodge Charger. Appellant, however, represented to Mark that the car was abandoned and proceeded to sell the car to Mark and his nephew for $2,000.00. The State did not produce any evidence that Appellant physically placed the car on his lot or that Appellant helped remove the car when he sold it to Mark and his nephew. However, despite the fact that there was no evidence to indicate that Appellant ever came into contact with the car, it has long been recognized that a defendant does not need to personally exercise physical control over property in order to establish that a taking has occurred. *See, e.g., United States v. Morgan,* 805 F.2d 1372, 1377 (9th Cir.1986); *State v. Patton,* 364 Mo. 1044, 1050, 271 S.W.2d 560 (Mo. 1954); *Smith v. State,* 11 Ga.App. 197, 198, 74 S.E. 1093 (Ga.Ct.App.1912). Rather, "[a] taking may be accomplished by any means. It may be effected through an animate or inanimate agency; and, if the taking is procured by an agent, it matters not whether the agent is innocent or guilty." 3 Charles E. Torcia, *Wharton's Criminal Law* § 364, p. 423 (15th ed. 1995) (footnotes omitted); *see also* Wayne R. LaFave, *Substantive Criminal Law,* § 19.3(a), p. 75 (2d. ed. 2003) ("[O]ne may 'take' the property of another, although he personally does not acquire dominion over it, if he sells it as his own to an innocent third person, who then takes possession of it.") (footnote omitted). Likewise, "[a]n asportation may be accomplished by the defendant personally, by mechanical means, or by a human agent." *Wharton's Criminal Law* § 367, p. 430 (footnotes omitted). In light of these rules, the majority of courts

hold that when a defendant sells property that he does not own to an innocent purchaser, the purchaser is the defendant's agent for purposes of the caption and asportation requirements, and the purchaser's taking and carrying away is attributable to the defendant. LaFave at § 19.3(b), p. 76; *McAlevy v. Commonwealth,* 44 Va.App. 318, 324, 605 S.E.2d 283, 286 (Va.Ct.App.2004) ("[T]he majority of jurisdictions that have considered the innocent agent doctrine in larceny cases have adopted the view that asportation by an innocent purchaser from the non-owning seller establishes the 'seller' as the principal in the first degree."); *see also State v. Rozeboom,* 145 Iowa 620, 124 N.W. 783 (Iowa 1910); *Commonwealth v. Barry,* 125 Mass. 390 (Mass.1878).

[¶ 23] We have never expressly decided whether the taking and carrying elements of larceny may be attributed to a defendant's innocent agent. In *Murdock,* 351 P.2d 674, however, we recognized that a taking and carrying may be attributed to a third party. In that case, the defendant, William Murdock, and his wife, Jean Murdock, were charged with larceny of their neighbor's sheep. *Id.* at 676. The State's theory of the case was that the Murdocks, who were also in the sheep business, had taken some of their neighbor's sheep and altered and defaced the brands on several of the animals. *Id.* Jean Murdock, however, moved for a separate trial, and, after the motion was granted, the case proceeded only against Mr. Murdock. *Id.* In determining whether the evidence was sufficient to support Mr. Murdock's larceny conviction, we stated that "to support the conviction there must be a definite showing that defendant performed some act of taking, an asportation, *or that he caused or procured Jean Murdock to perform such act;* and that he must have done so with the intent to steal." *Id.* at 678 (emphasis added). We held there was substantial evidence to support the finding that Mr. Murdock caused his wife to commingle his neighbor's sheep with his own. *Id.* at 678–79. As that decision clearly indicates, a defendant does not need to personally exercise physical control over property in order

to establish that the elements of taking and carrying have been met.

[¶ 24] Appellant contends that, in *Murdock*, we held only that a taking and carrying by an *accomplice* may be attributed to the defendant, and that the holding in that case does not extend to innocent agents. He points to our decision in *Mendicoa*, 771 P.2d at 1243, in which we replaced Mrs. Murdock's name with "[an accomplice]" when quoting the language from that case. *See also Fischer v. State*, 811 P.2d 5, 7 (Wyo. 1991). However, Mrs. Murdock was never determined to be an accomplice in *Murdock*, and, because Mrs. Murdock was granted a separate trial, the issue of whether she was an accomplice was never considered. Even if the facts presented in *Murdock* had established that Mrs. Murdock was an accomplice, we have never held that the actions of an innocent third party cannot be attributed to the defendant. Indeed, in determining whether a third party's actions may be attributed to a defendant for purposes of establishing the elements of larceny, we find no reason to draw a distinction between the agent who has no knowledge of the defendant's criminal activity and the agent who has agreed to the criminal enterprise.

[¶ 25] Turning now to the issue of whether the evidence was sufficient to establish a taking and carrying of the vehicle, we conclude that these elements were satisfied. At the time Mark bought the vehicle from Appellant, Corey was the owner of the car. Consequently, Mark's purchase of the vehicle constituted a taking from Corey. With regard to the asportation element, we can easily conclude that the evidence of Mark's loading the vehicle onto a trailer and transporting it to his house was sufficient to establish that he carried the property away. As noted above, both the taking and carrying by Mark are attributable to Appellant. For that reason, we conclude that there was sufficient evidence to establish that the taking and carrying elements were satisfied.

[¶ 26] In his final issue, Appellant claims that the district court erred in refusing to allow the defense to impeach one of the State's witnesses by presenting evidence of that witness's prior felony convictions. Because the jury instruction issue is dispositive, we need not address this issue.

[¶ 27] Reversed and remanded for a new trial.

VOIGT, Justice, specially concurring.

[¶ 28] I agree wholly with the majority opinion, but only because of the distorted way in which this case was charged and tried. The State's theory was, and it produced evidence intending to prove, that the appellant was rightfully in possession of the vehicle as a result of his conversations over the years with its owner, Corey. Under those circumstances, the proper charge against the appellant, if any, was larceny by a bailee under Wyo. Stat. Ann. § 6–3–402(b) (LexisNexis 2009). "Bailee" is defined in the larceny statute as "a person other than the owner of property who rightfully possesses property[.]" Wyo. Stat. Ann. § 6–3–401(a)(i) (LexisNexis 2009). To commit larceny, a bailee does not "take and carry"; he "converts the property to his own or another's use[.]" Wyo. Stat. Ann. § 6–3–402(b). If properly charged, the factual issues in this case for the jury would have been whether the appellant rightfully possessed the vehicle and, if so, whether he converted it as contemplated by the statute.

[¶ 29] I write separately only to suggest that, by answering the questions that were presented in this case, this Court is not announcing that the traditional "take and carry" form of larceny necessarily was the correct charge.