HIGGINS, Justice.
 

 The accused was indicted, tried, and convicted of the crime of cattle stealing, and was sentenced to serve from fifteen to thirty-six months in the State Penitentiary. He filed a motion for a new trial on the ground (1) that the verdict of the jury was contrary to the law and the evidence, and (2) that, since his conviction, he had discovered new evidence, consisting of the proposed testimony of three witnesses, to the effect that after the alleged stolen heifer or yearling had been taken from Avoyelles Parish to Alexandria, Rapides Parish, and disposed of, these witnesses had seen a heifer or yearling answering the description of the alleged stolen heifer or yearling with the prosecuting witness’ other cattle on the' open range, as appeared from three annexed affidavits conforming with the provisions of Articles 511 and 512 of the Code of Criminal Procedure.
 

 The trial judge overruled the motion for a new trial stating that the first ground presented very little for the court to consider and the second ground was insufficient to warrant the court granting a new trial, because the alleged “new evidence mentioned ought not to have and would not have produced a different result in the verdict.”
 

 Counsel for the defendant reserved a bill of exception and later appealed from the verdict of the jury and the sentence of the court.
 

 In this Court, the defendant raised the additional issue as 'to the validity of the sentence, in that it does not conform with the requirements of Article 529 of the Code of Criminal Procedure, which provides that the minimum sentence shall not be “more than one-third of the maximum sentence imposed”.
 

 The district attorney, in his argument at the bar, questioned the right of the accused to have this Court consider the issue of whether or not, under the State’s evidence, conceding it all to be true, it had failed to make out a case of cattle stealing against the defendant, who contended that the record affirmatively shows that the essential element of asportation was completely lacking.
 

 This Court has held -that where the evidence of the prosecution is accepted as true and it does not prove the crime charged, we can consider the legal issue presented, even though no bill of exception was taken, because it is an error patent on the face of the record. Even in a case where it is admitted by the State or ^declared by the district judge in his per curiam that there is no proof of some essential element of the crime charged, the question of the validity of the conviction becomes a question of law, which
 
 *64
 
 this court will review. State v. Martinez, La.Sup., 10 So.2d 712 ;
 
 [1]
 
 State v. Drew, et al., La.Sup., 11 So.2d 12;
 
 [2]
 
 State v. Rider, La.Sup., 10 So.2d 601 ;
 
 [3]
 
 State v. Wilson, 196 La. 156, 198 So. 889; and State v. Larrivierre, 151 La. 399, 91 So. 778. Furthermore, in his motion for a new trial, the defendant made the point that the verdict of the jury was contrary to the law and the evidence on the ground that the State’s evidence showed that there was no carrying away of the alleged stolen animal by the accused and that he never had possession thereof. When the trial judge overruled the motion, counsel for the defendant reserved a bill of exception. Therefore, the accused has the right, on either of the above grounds, to have the Court consider this legal question.
 

 From the per curiam of the trial judge and the brief and argument of the State, it clearly appears that the indictment in question resulted from the following facts: In the early part of 1939, the defendant, as the owner, sold a white-faced heifer or yearling, which was grazing on a free range, to Camille A. Bordelon, who took possession of the animal and placed it with his herd on the range; and that on or about June 15, 1939, he (the defendant) sold the same heifer, while on the range, to Sam Jeansonne, who, unaided and unaccompanied by the defendant, carried the animal away and subsequently disposed of it.
 

 The defendant admitted that he sold a white-faced heifer to Camille Bordelon in the early part of 1939, and that on June 15, 1939, he sold a white-faced heifer to Sam Jeansonne for the sum' of $20. He stated that he had three white-faced heifers; that the one he sold to Jeansonne was not the same animal which had been sold to Bordelon; and that he sold the third heifer to Alcide Desselle.
 

 In connection with the first ground on which the motion for a new trial is based, i. e.,- that the verdict is contrary to the law and the evidence, the defendant’s attorney contends that from the unquestioned facts in the record, as well as those contained in the State’s brief, the defendant, as a matter of law, was illegally convicted of the crime of cattle stealing, even conceding he sold the same heifer to Jeansonne that had been previously sold and delivered to Bordelon, because one of the essential elements of the crime was lacking, namely, asportation of the alleged stolen property. It appears that at the time Jeansonne approached the defendant and offered to buy the white-faced heifer on June 15, 1939, the animal was on the open range and that Jeansonne acted in good faith in purchasing it and taking it away. The defendant at no time had physical possession of the animal and in no way assisted in driving or carrying it from the range. This was done by Jeansonne, the innocent purchaser, for value and the defendant was not present when this happened.
 

 Counsel for the State argues that where the owner sells a heifer and the transac
 
 *66
 
 tion is completed by delivery of the animal to the purchaser, if the vendor subsequently sells the same heifer to an innocent third party for value, while the animal is on the range and he (the purchaser) takes possession of the heifer and disposes of it, the seller is guilty of larceny or cattle stealing within the meaning and contemplation of the statute, even though the seller was not present and in no way assisted the subsequent purchaser in taking possession of and removing thé animal.
 

 Act No. 64 of 1910 provides: “That whoever shall steal a cow, calf, bull, ox or any other specie of cattle shall be guilty of a felony and upon conviction shall suffer imprisonment at hard labor for not less than one year nor more than five years.”
 

 In the case of State v. O’Day, 1938, 191 La. 380, 185 So. 290, the accused was charged in a bill of information with being a triple offender, under the provisions of Act 15 of 1928. The State alleged that the accused had been previously convicted of the crime of stealing an automobile of the value of $850 in the Province of Alberta, Dominion of Canada, and that this crime, if it had been committed in Louisiana, would likewise have been a felony under our law. Counsel for the defendant made the point that under the law of this State, asportation was an essential element- of the crime of theft or larceny, whereas, under the Canadian statute, aSportation of the automobile was not necessary to constitute the crime and, therefore, the offense committed in Canada was not a felony under our law. We held that asportation of the alleged stolen property was an indispensable element of the crime of theft or larceny and, as the State had not shown that the automobile was moved by the accused, the prosecution had failed to make out a case against the defendant as a triple offender. We set aside the sentence and remanded the case to the district court, with instructions to sentence him as a second offender.
 

 In that case, as in the present one, the Court was not referred to any statute of Louisiana which dispensed with asportation as one of the essential elements of the crime of theft or larceny. The transaction between the accused and Jeansonne having taken place on June 15, 1939, obviously the Louisiana Criminal Code, Act 43 of 1942, and particularly Article 67 thereof, is inapplicable. Consequently, under the law of this State, asportation of the alleged s.tolen property is necessary in order to constitute the crime of larceny or theft, and the State must offer evidence to prove it. See Marr’s Criminal Jurisprudence, Zd Ed., Vol. 1, “Larceny”, page 265, par. 159, page 268, par. 162.
 

 In 17 R.C.L., under the title of “Larceny,” sub-title “Asportation”, paragraph 21, we find: “A felonious taking is an essential element of larceny, but alone it is not sufficient to constitute the crime. It must be followed by such an asportation or carrying away as to supersede the possession of the owner for an appreciable time. Hence the crime is not complete until there has been an asportation, although the offender had the power to carry the property away. * * * ”
 

 
 *68
 
 In 32 Am.Jur., under “Larceny”, subtitle “Asportation”, Section 16, page 902, it is stated: “Although a felonious taking is an essential element of larceny, it is not, in itself, sufficient to constitute the crime at common law and under statutes declaratory thereof. It must be followed by such an asportation or carrying away as to supersede the possession of the owner for an appreciable time. In the absence of a statute changing, the rule, the crime is not complete until there has been an asportation, although the offender had the power to carry the property away.”
 

 In the case of Molton v. State, 105 Ala. 18, 16 So. 795, 796, 53 Am.St.Rep. 97, the accused was indicted under a statute which provided that larceny of a hog or of other domestic animals therein enumerated was a felony. It was shown that the defendant shot and killed a hog belonging to another person with the intent of stealing it, but did not have an opportunity thereafter to remove it. He reserved a bill of exception to the instruction of the trial court, as follows: “If a man shoots the hog of another with the intent to steal it and kills the hog, and takes possession of it, he is guilty of larceny; or if he gets near enough to the hog to exercise dominion and control over it, after the killing, with the intent to steal it, he is guilty of larceny thereof.” In holding that there had been reversible error in the latter part of the instruction, the court, in citing State v. Alexander, 74 N.C. 232, said: “‘To complete the crime of larceny, it is not sufficient that the defendant had the control of the article, — that is, had the power to remove it, — but there must be an asportation of the thing alleged to have been stolen. It is true a very slight asportation will be deemed sufficient; yet there must be some removal to complete the offense. The case here shows that there was no removal of the hog, but that it remained in situ, as it had been shot down.’ ”
 

 There is a division of authority on the legal question of whether or not the selling of property by a person, who did not own it, to an innocent party, who, without any criminal intent or purpose, removes it from the possession of the owner, unassisted and unaccompanied by the seller, is larceny or theft on the part of the seller. Some cases hold that while a fraud has been committed,1 the seller is not guilty of larceny or theft, because the essential element of asportation is lacking, the seller not having obtained actual or constructive possession of the alleged stolen property. People v. Gillis, 1889, 6 Utah 84, 21 P. 404; Ridgel v. State, 1914, 110 Ark. 606, 162 S.W. 773; Henderson v. State, 1906, 79 Ark. 333, 96 S.W. 359, 10 L.R.A.,N.S., 816.
 

 On the other hand, under similar or identical facts in other jurisdictions, the courts reached the conclusion that theft or larceny was complete on the theory that the bona fide purchaser, who removed the alleged stolen property, was the innocent agent of the seller. State v. Hunt, 1877, 45 Iowa 673; Cummings v. Comm., 1883, 5 Ky.Law Rep. 200; Scott v. State, 1939, 138 Fla. 568, 189 So. 661; Long v. State, 1902, 44 Fla. 134, 32 So. 870, 14 Am.Crim.Rep. 453; Smith v. State, 1912, 11 Ga.App. 197, 74 S.E. 1093.
 

 
 *70
 
 The latter cases predicate their holding entirely on the ground that the bona fide purchaser becomes the innocent agent of the seller and, therefore, his action in taking possession of the alleged stolen property, removing it, and converting it to his own use becomes the action of the seller. In the opinions in these cases, no effort is made by analysis to show by what process of reasoning the purchaser for value in good faith is said to be the agent of the seller. The courts merely make the declaration that the purchaser is the innocent agent of the vendor.
 

 In the case of Scott v. State, Fla., supra [138 Fla. 568, 189 So. 662], the Court cites 17 R.C.L., page 11, Section 11, to the effect that if the accused has an innocent person to take
 
 "the goods for him”,
 
 the offense is the same as if he had taken the goods himself.
 

 In support of the text, Aldrich v. People, 1906-1907, 224 Ill. 622-628, 79 N.E. 964, 966, 7 L.R.A.,N.S., 1149, 8 Ann.Cas. 284, 115 Am.St.Rep. 166, is cited. In that case, the defendant by the trick or device of shifting the tags on certain trunks obtained the property 'of another, the transfer company delivering the trunk in question to the accused as the result of the changing of the tags. In affirming the judgment of conviction, the Court said: “It will thus be seen that an asportation may be effected by means of innocent human agency as well as mechanical agency, or by the offender’s own hands. One may effect an asportation of personal property so as to be guilty of larceny by attaching a gas pipe to the pipes of the company and thus draw the gas into his house and consuming it without its passing through the meter. Clark & Marshall on Law of Crimes, p. 446 and cases cited in note; Woods v. People, 222 Ill. 293, 78 N.E. 607 [7 L.R.A.,N.S., 520, 6 Ann.Cas. 736, 113 Am.St.Rep. 415], From these cases the law appears to be well settled that, where, with the intent to steal, the wrongdoer employs or sets in motion any agency, either animate or inanimate, with the design of
 
 effecting a transfer of the possession of the goods of another to him in order that he may feloniously convert and steal them,
 
 the larceny will be complete, if, in pursuance of such agency,
 
 the goods come into the hands of the thief and he feloniously converts them to his own use,
 
 and in such case a conviction may be had upon a common-law indictment charging a felonious taking and carrying away of such goods. If, in the case at bar, the plaintiff shifted the checks on the trunks, by means of which the servants • of the transportation company were innocently led to further the criminal purpose
 
 by delivering the trunk in qiiestiow to the accused, who received and converted the same to his own use,
 
 and if there was in the mind of the plaintiff in error a felonious intent
 
 to steal this property pervading the entire scheme and attending every step of it, then he is guilty of larceny,
 
 and the instruction under consideration, as applied to such a state of facts, is a correct statement of the law and there was no error in giving it to the jury.” (Italics ours.)
 

 It will be noted that the court emphasizes the fact in its holding that the accused
 
 *72
 
 obtained unlawful possession of the trunk as the result of using innocent persons to accomplish that purpose.
 

 In Scott v. State, Fla., supra, it will also be noted that the fraudulent seller went with the bona fide purchaser and others to where the hogs were; that he was present when they were caught and penned and placed in- the truck to be hauled away, all under his direction and by authority of the fraudulent act of sale, although he, the seller or defendant, did not place his hands on the hogs.
 

 In Smith v. State, Ga., supra, it will be observed that the accused, before the sale was made, directed the prospective purchaser to drive the owner’s cow, which was roaming at large in front of defendant’s house. Under those facts, it might be said that he thereby came into possession of the animal.
 

 Also, in support of the same text (17 R.C.L., page 11, Section 11) the case of Commonwealth v. White, 1887, 123 Mass. 430, 25 Am.Rep. 116, is cited. In that case the accused was indicted for the crime of feloniously receiving and concealing stolen property, knowing the same to have been stolen. It appears that the bonds had been stolen from Stone in New York by an unknown thief, who entrusted them to his agent to be sold in Boston, Massachusetts. The defendant purchased the bonds from the agent there. The accused requested the court to .charge the jury that in order to convict him, the jury must be satisfied that the defendant received the bonds in that State (Massachusetts) from the person who actually stole them. The Court held that the possession of the stolen bonds by the thief’s agent was the possession of the thief himself and, therefore, the case was just the same as if the thief had brought the stolen bonds into Massachusetts and disposed of them, thereby making him subject to indictment and punishment for larceny there. The court further pointed out that it was not always necessary for the thief to be personally present to make him guilty of larceny, and said: “If a man incites an insane person or a child or an innocent agent to commit a larceny in his absence, he is liable to the same extent as if personally present at the commission of the crime; and this is so, even if he was all the time in another jurisdiction.”
 

 It will be observed in the foregoing quotation that the Court does not state that where the offender is absent and uses the hand of another to carry the property away it is larceny if he thereby obtains possession of the property. However, in Corpus Juris, vol. 36, verbo “Larceny”, page 752, par. 58, it is stated: “One who induces a child, too young to understand the nature and quality of the act, to enter a house and to take an article therefrom, or money from a till, or who induces a minor by threats, or an adult by falsehoods,
 
 to deliver to him the property of g third person,
 
 or who,
 
 by the use of an innocent agent in any other way, obtains possession of the property of another,
 
 is as guilty as though he had taken it with his o-wn hands.” (Italics ours.)
 

 In the case of Farris v. State, 55 Tex. Cr.R. 481, 117 S.W. 798, 799, 131 Am.St.
 
 *74
 
 Rep. 824, a cow and a yearling belonging to Hamilton were running on the range at the time that the defendant sold them for value to an innocent party, who drove them away. The evidence showed that the defendant was not in possession of the animals and did not assist the purchaser in removing them. Under the legislative Penal Code, Article 77, Vernon’s Ann.P.C. art. 68, it was provided that if any one employed a person who could not be punished, to commit an offense, the offender, by the use of such indirect means, becomes a principal. The Court held that “Where the accused uses an innocent party to consummate a crime, if present, he would be a principal; if not present, he would still be a principal. * * * This character of case is brought strictly within the rules prescribed by the Legislature in Pen.Code 1895, Art. 77 * * The judgment of conviction for cattle theft and the sentence of the court were affirmed.
 

 In 19 R.C.L., page 724, we find: “In Texas the words ‘carry away’ are not included in the statutory definition of theft. ‘The “carrying away” or “asportation” which constitutes an essential element of larceny at common law, is not necessary, under our (the Texas) statute, to complete the offense * * *. The many nice distinctions in the old common-law authorities, as to what constitutes a sufficient asportation, are thus inapplicable to theft, as defined in the Code.’ Hall v. State, 1874, 41 Tex. 287. See to the same effect, Hartman v. State, 1919, 85 Tex.Cr.R. 582, 213 S.W. 936. The Texas cases are, therefore, not within the scope of this annotation.”
 

 We have not been cited any similar statute of Louisiana.
 

 In the instant case the heifer had been previously sold under a valid sale by the defendant as owner to Camille A. Bordelon, who took possession of the animal and exercised ownership thereof. The defendant did not by trickery, fraud, or inducement obtain possession of the animal from Bordelon, who had permitted the heifer to roam on the free range. Thereafter, Sam Jeansonne, who knew the white-faced heifer and was under the impression that the accused still owned her, approached him on or about June. 15, 1939 and asked him to sell him (Jeansonne) his white-faced heifer on the range. The accused agreed to sell the heifer to Jeansonne for $20 cash. Jeansonne, unassisted, unaided, and unaccompanied by the defendant, and out of the defendant’s presence, went on the range and took possession of the heifer and exercised ownership thereof by disposing of it. Under these facts and circumstances, it is difficult to understand under what legal theory it can 'be said that Jeansonne, as a bona fide purchaser, in taking possession of the heifer and carrying it away, was acting as the agent of the seller. Both parties to the transaction contemplated that Jeansonne was acting for his own account and he did not in any way intend to act as the agent or representative of the defendant. He took possession of the animal and carried it away for his own benefit
 
 *76
 
 in his capacity as the purchaser and owner thereof. He retained his possession of the animal at all times for himself in good faith, believing that he was the lawful owner thereof and disposed of it as such. The custody of the animal by the vendee certainly cannot be considered as the constructive possession of the vendor, because Jeansonne was at all times holding the animal in the capacity as purchaser for himself. , Since the defendant at no time had the actual or constructive possession of the animal, the act of the purchaser in carrying it away for his own account cannot be said in legal contemplation to have been the act of the seller. The facts of the case repel any idea of implied agency, because Jeansonne unquestionably. acted as a bona fide purchaser for himself. Of course, it was a fraud upon Jeansonne for the defendant to obtain his money by false pretense, but this certainly does not warrant the court in holding that Jeansonne was the innocent agent or representative of the defendant. Consequently, it cannot be said that there was any implied or constructive asportation of the heifer by the defendant. As asportation is an essential element of the crime of larceny or cattle stealing and there has not been any statute in this State dispensing with that element (as was provided by the Texas statute) — where the accused unlawfully sells to an innocent person for value the property of another and the purchaser, without any help or assistance from the accused and during his absence takes possession of and carries the property away and the accused never comes in possession thereof, he cannot be convicted of the crime of larceny or theft, because the essential element of asportation is lacking.
 

 This is in keeping with the well-established rules of construction of criminal laws which are always strictly construed. The State of Texas, which is one of the greatest cattle raising states in the Union, solved this problem by passing an act of the Legislature dispensing with the element of carrying the property away or asportation and for this Court to declare that the bona fide purchaser is the innocent agent of the fraudulent seller in removing the property is equivalent to the court legislating, as Texas did, by dispensing with the element of asportation.
 

 In view of the above conclusion it is unnecessary to consider the two other points raised by the defendant.
 

 For the reasons assigned, the verdict of the jury and the sentence of the court are annulled and set aside and the accused is discharged.
 

 ROGERS, J., absent.
 

 PONDER, J., dissents.
 

 [1]
 

 201 La. 949.
 

 [2]
 

 202 La. 8.
 

 [3]
 

 201 La. 733.