368 So.2d 711 (1979)
STATE of Louisiana, Appellee,
v.
Anthony C. VICTOR, Appellant.
No. 63135.
Supreme Court of Louisiana.
March 5, 1979.
*712 Weldon J. Hill, II, Baton Rouge, for defendant-appellant.
William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Mary V. Gilliland, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.[*]
After a non-jury trial, the defendant was convicted of theft, La.R.S. 14:67. The trial court deferred sentence for two years, placing the defendant on active probation, conditioned upon his receiving mental health treatment.
On appeal, in his two assignments of error (taken respectively to the denial of motions for acquittal and for a new trial) the defendant raises a single issue: he contends that there is no evidence of (1) a "misappropriation or taking" (2) with "intent to deprive" the owner permanently of the object of the theft, two of the elements of the crime. La.R.S. 14:67.
On appeal, this court's jurisdiction is limited to questions of law; therefore, if there is some evidence proving essential elements of the crime, no question of law is presented, sufficiency of the evidence being a matter to be decided by the trier of fact. State v. Madison, 345 So.2d 485 (La.1977); State v. Woods, 327 So.2d 405 (La.1976); State v. Williams, 310 So.2d 513 (La.1975).
As these decisions note, this court may reverse a trial court's denial of a directed verdict or of a new trial only where there is no evidence, direct or circumstantial, by which the trier of fact might reasonably have concluded the defendant's guilt.
As we stated in State v. Lindinger, 357 So.2d 500, 501 (La.1978): "For purposes of appellate review, the issue of whether there is a total lack of circumstantial evidence to prove the crime (or an essential element of it) is decided by whether or not there is some evidence from which the trier of fact could reasonably conclude that beyond a reasonable doubt the accused had committed every element of the crime with which charged."
Facts
The offense charged is a shoplifting-type theft in a discount store. From the evidence, the trier of fact could reasonably conclude:
The defendant removed a terrarium and placed in its box a television set. The box was on a shopping cart. He then went to another area of the store and spoke to his two daughters. The daughters came and pushed the cart to the checkout counter. The cashier rang up the prices of the visible goods, but then lifted the terrarium box to reveal hidden in it the television set and certain other goods.
The defendant was charged with and convicted of the theft of the goods hidden in the box.
The Defendant's Contentions
The defendant argues that, at most, the evidence shows an attempted theft. His argument is based on two contentions:
(1) He himself never obtained control of the property so that it constituted a "taking", citing State v. Neal, 275 So.2d 765 (La.1975). As that decision stated, however, 275 So.2d 770: "A theft occurs, when *713 the thing is taken, although it may remain in the possession of the thief for only seconds." Concerning this decision, Professor Dale Bennett commented, 34 La.L.Rev. 345: "It is of the essence in theft that the thief must have acquired control of the property. As illustrated by the facts of Neal, the duration of such control. . . is immaterial."
(2) He himself did not carry away the objects (although his daughters may possibly have), so that therefore was no "asportation" by the thief himself, a prerequisite to the commission of the crime of theft, citing State v. Laborde, 202 La. 59,11 So.2d 404 (1942). In Laborde, the defendant had sold a heifer on the open range (belonging to another) to an innocent third person, who had himself carried (asported) the heifer away; the defendant's conviction was reversed for lack of any evidence to prove the crime's (then) essential element of asportation.
"Asportation" as Required by Laborde
However, Laborde is not persuasive authority.
In the first place, its holding that the "asportation" could not be accomplished by means of the acts of a third person has uniformly received scholarly criticism as illogical and unduly technical. Morrow, The 1942 Louisiana Criminal Code in 1945, 19 Tul.L.Rev. 483, 494-501 (1945); Michael, Present Problems in Louisiana Substantive Criminal Law, 11 Loyola L.Rev. 70, 73 (1962); Bennett, Work of Louisiana Supreme Court for the 1942-1943 Term, 5 La.L.Rev. 512, 556-57 (1944); Note, 5 La.L. Rev. 323 (1943); LaFave and Scott, Criminal Law 632 (footnote 14) (1972).
In the second place, the crime in Laborde was committed prior to the enactment of the Louisiana Criminal Code of 1942, article 67 (now La.R.S. 14:67), and Laborde itself indicated that the "asportation" formerly required for larceny or theft was no longer an element of the crime of theft under the new article 67. 11 So.2d 406. See also Morrow, Bennett, and Note, cited above.
Theft under La.R.S. 14:67
By Article 67 of the Louisiana Criminal Code of 1942, now La.R.S. 14:67, the traditional and technically defined criminal offenses of larceny, embezzlement, and obtaining by false pretenses were combined into a single crime. The intention of the new statutory language was to provide simply and clearly "the fundamental notion that it is socially wrong to take the property of another, in any fashion whatsoever." See Official Revision Comment, "General purposes of section."
As defined by La.R.S. 14:67, theft consisted of three elements: (a) the "misappropriation or taking of anything of value which belongs to another," (b) either "without the consent of the other . . . or by means of fraudulent conduct," (c) with "intent to deprive the other permanently" of the object of the taking or misappropriation.[1]
The "asportation" problem of Laborde had its origin in the technical requirements of the common-law crime of larceny. The crime required both the taking (caption) of personal property of another and carrying it away (asportation), with intent to steal it. Clark and Marshall, The Law of Crimes, Sections 12:00, 12:05 (7th ed. 1967); LaFave and Scott, Criminal Law, Section 86 (1972). Caption required that the thief achieve full dominion over the object, displacing the control of its rightful possessor. Asportation, on the other hand, could be slight, almost imperceptible: any movement of the thing, even a few inches, was sufficient.
In the generic crime of theft now provided by La.R.S. 14:67, the requirement of the former larceny crime was replaced by the requirement that there be a "misappropriation or taking" of the property of another.
*714 As the official revision commit to article 67 notes, the technical distinctions of the many former common-law "theft" crimes were eliminated. See also Bennett, The Louisiana Criminal Code, A Comparison with Prior Louisiana Criminal Law, 5 La.L. Rev. 5, 37-38 (1942). While a "taking" was still required (i. e., the thief must acquire control of the property), the technical "asportation" requirement was eliminated, as an element of the crime. The official revision comment indicates that, for the former "asportation" concept, the "slightest . . . misuse of anything belonging to another should be sufficient, but in any case it would be a question for the court to decide whether the offender's activity was sufficient to amount to a `taking'."[2]
Thus, for conduct of the present nature, La.R.S. 14:67 provides that a theft may occur when there is a "misappropriation" (exercise of wrongful dominion) or a "taking" (unauthorized control) of the property of another,[3] without regard to whether there is physical movement (asportation) or as to whether the thief has accomplished the misappropriation or taking by himself personally or through the agency of others.
Conclusion
The factual issue of whether there is a "taking" for purposes of a theft concerns whether the offender exerts control over the object adverse to or usurpatory of the owner's dominion.
For instance, under usual circumstances the ordinary shopper does not disturb the owner's dominion by handling goods displayed for sale. The mere fact that a customer has removed a large item from its package, in order to inspect it, will not ordinarily be any evidence of theft. In this instance, no inference arises of any intent to deprive the owner permanently of the object, nor does even any inference arise of *715 a "taking"i. e., an intent to usurp or negate the owner's dominion.
In the present case, the trial court could reasonably conclude from the evidence that the defendant had concealed the store's goods in the terrarium box and had then directed his daughters to the checkout counter (where they would be charged only for the less expensive terrarium but not for the goods concealed within the box).
The defendant's hiding the television set in the box is under the circumstances at least some evidence of a "taking", although it may not have given rise to an inference of an intention to deprive the owner permanently of the latter's property. Nevertheless, the trier of fact could conclude beyond a reasonable doubt from the evidence as a whole, not only a taking, but also an intent by it to deprive the owner permanently of the objects concealed in the terrarium box.
Thus, some evidence tends to prove each of the crime's elements which the defendant disputes as shown by any evidence in the record. Accordingly, since we do not review the sufficiency of the evidence (but only reverse if no evidence proves the crime or one of its elements), we affirm the conviction and sentence.
AFFIRMED.
NOTES
[*] Judge Cecil C. Cutrer of the Louisiana Court of Appeal, Third Circuit, is sitting as an Associate Justice Ad Hoc on this case.
[1] La.R.S. 14:67 provides: "Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. * * *"
[2] The late Professor Morrow, one of the three draftsmen of the 1942 Criminal Code, explained that the former "asportation" concept was suppressed by omission, and that the official revision comment concerning "asportation" (set forth in the official explanation in quotes) was used in the comment only to relate the new code article to the past, for the benefit of those working on the revision. Morrow, cited in text, at 19 Tul.L.Rev. 495-98. He notes that from the words of the code article itself, as well as the revision comment, the notion of physical movement incorporated in the old concept of "asportation" has been abolished by its omission from the statutory elements of the crime.
[3] The concept is that the thief exerts wrongful dominion or acquires control over the property of another, without his consent. The same concept is expressed by the American Law Institute Model Penal Code, Section 223.2(1) (1962), which similarly defines theft: "A person is guilty of theft if he takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." (Italics ours.)

In Tentative Draft No. 2 (1954), the Advisory Committee Comment discusses the intent to replace all the technical common-law distinctions, pp. 61-62, and replace them with a test similar to Louisiana's: "We have chosen `taking' or exercise of `unlawful control' as the test, thus dispensing with the common law standards of physical seizure and movement. `Taking' unauthorized control becomes the touchstone in the ordinary case of theft by a stranger; `exercise' of unauthorized control is the requirement in the typical embezzlement situation where the actor already has lawful control." Id., p. 62.
See also Tentative Draft No. 1 (1953), p. 65: "The concept of appropriation serves to differentiate completed property offenses from attempts. This is a difficult problem because all theft partakes of the character of attempt. The thief proposes to make the property his own more or less permanently; but he is nonetheless a thief if, shortly after he exerts his dominion over the property of another, he is prevented from making off with it. The precise point at which it can be said that the actor exerted adverse control will depend, inter alia, on the nature of the property and the usual means by which control is exerted over that kind of property. It is not necessary that the actor have gone far enough to gain unhindered control. Appropriation is not to be tested by mechanical rules such as characterized common law larceny. Particularly, `caption', in the sense of undisputed physical control, and `asportation', i. e., removal of the object from its former location, are not requisites of appropriation. These are but circumstances to be considered along with all others relevant to the ultimate issue whether the behavior of the actor constituted a negation or usurpation of the owner's dominion. Community attitudes with respect to what constitutes proprietary behavior in relation to a particular species of property are a proper consideration."