ARMSTRONG, Judge.
Defendant Michael J. Gaidos was arrested on May 19, 1992 and charged with theft of merchandise valued at less than one hundred dollars after having been previously convicted of theft two or more times, a violation of La.R.S. 14:67(B)(3). Defendant pled not guilty at arraignment on June 19, 1992. On August 11, 1992 defendant was found guilty as charged by the court. Defendant was subsequently sentenced to serve eighteen months at hard labor and pay court costs of $161.50 or serve an additional thirty days in jail in lieu of payment thereof. Defendant now appeals that conviction and sentence.

FACTS

Denise Cratcham, employed by Sears Roebuck in their security department, testified that on May 19, 1992 she was monitoring the floor security cameras when she observed defendant in the Boys Department carrying a tool set. She watched as defendant passed a cash register and moved to the Infants Department. Defendant passed another cash register and Miss Cratcham went out onto the floor. Upon arriving on the floor, Miss Cratcham met another security person, Darryl Butler.
Miss Cratcham testified that defendant stopped, looked at her, and placed the tool box on the floor. Defendant then broke into a run and exited the store through the Plaza Drive door. Defendant jumped into a waiting track and the driver of the track got out of the vehicle saying he did not want anything to do with it.
Darryl Butler testified that Miss Cratcham notified him that a shoplifting was in progress. Defendant had a tool box in his hand and was heading in the direction of the store exit on Plaza Drive. Mr. Butler testified that he recognized defendant from a prior shoplifting arrest. Mr. Butler said he and Miss Cratcham approached defendant and Mr. Butler asked defendant to put the tool set down, step towards the nearest wall podium and put his hands on the podium. Defendant complied by stopping, walking back towards the security officers and setting the box on the floor. As Mr. Butler was attempting to frisk defendant, he shoved Mr. Butler and ran out of the exit with the two security officers in pursuit. Mr. Butler and defendant began to wrestle and the defendant then ran to a nearby track. The driver of the track got out and stated that he did not want anything to do with the situation. Defendant then exited the truck and ran to a nearby parking lot where he was subdued by Mr. Butler and mall security. Defendant was then taken to the security office at Sears.
The defense presented no witnesses, but stipulated to two prior misdemeanor theft convictions.

Errors Patent

A review of the record for errors patent reveals none.

SUFFICIENCY OF THE EVIDENCE

Defendant asserts that the trial court erred in denying the motion for verdict of acquittal. Defendant’s argument, however, is that the evidence was insufficient to convict him.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). When a conviction is based upon circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. State v. Camp, 446 So.2d 1207 (La.1984). This is not a stricter standard of review, but it is an evidentiary guideline to facilitate appellate review of whether a rational trier of fact *1330 could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
The defendant was convicted of theft after having been previously convicted of two or more thefts and received an enhanced sentence under R.S. 14:67(B)(3). R.S. 14:67(A) defines theft as:
[T]he misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation, or taking or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Paragraph (B)(3) states that:
When the misappropriation or taking amounts to less than a value of one hundred dollars, the offender shall be imprisoned for not more than six months, or may be fined not more than five hundred dollars, or both. If the offender in such cases has been convicted of theft two or more times previously, upon any subsequent conviction he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than one thousand dollars, o or both.
Here, defendant argues that the essential elements of a taking with the intent to permanently deprive were not proven at trial. Defendant argues that the goods were not removed from the store, and there was no action by defendant from which the court could have inferred an intent to permanently deprive. Defendant references R.S. 14:67.10 (Theft of Goods), which delineates specific acts from which the intent to deprive the merchant permanently of goods may be inferred. That statute, in pertinent part, reads as follows:
A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:
(1) Intentionally conceals, on his person or otherwise, goods held for sale.
(2) Alters or transfers any price marking reflecting the actual retail price of the goods.
(3) Transfers goods from one container or package to another or places goods in any container, package, or wrapping in a manner to avoid detection.
(4) Willfully causes the cash register or other sales recording device to reflect less than the actual retail price of the goods.
(5) Removes any price marking with the intent to deceive the merchant as to the actual retail price of the goods.
(6) Damages or consumes goods or property so as to render it unmerchanta-ble.
Defendant correctly argues that he exhibited no behavior identified in R.S. 14:67.10 from which the court could infer an intent to permanently deprive. However, the trial court viewed a video tape which showed defendant for a total of approximately 23 seconds.[1] The court based its verdict in large part (1) on the fact that the defendant passed two cash registers and “flashed” his wallet as if attempting to pay for the merchandise and (2) his flight upon being stopped by store security. Referring to defendant’s actions the court stated:
[T]he viewing of the film, and the listening to the testimony, the Court is almost— finds itself with the inescapable conclusion that Mr. Gaidos when he did take possession of that equipment, he did not intend to pay for it. It was rather dramatically emphasized on the film that as he is flashing his wallet as he goes past each register, it is my impression [I]t is my impression that what he is trying to convey or what he is attempting to convey, is that he *1331 is in the process of paying for it; however, he walks past the register and the same thing happens with another register. I suppose that, that is a rather slick or very, very sharp ploy or maneuver that you are doing to make those people at the cash registers not be alerted, by the fact that you have your wallet in your hand. There is never any intention for you . to go to the wallet and take any money from the wallet to pay for the merchandise.
The flight, in my opinion, in this particular ease, I feel was prompted by a
sense that you are guilty, that you felt you had been apprehended, and that is even heightened by the situation that there is someone outside waiting for you in a getaway car.
The video shows that defendant entered the Boys Department with the tool box in one hand and reached for his wallet with the other. Defendant removed his wallet, flipped it open and looked at it. Defendant then replaced his wallet in his rear pocket. At the time that defendant’s wallet was out, however, no register is visible on the tape. By the time defendant passes what appears to be a register, he has already replaced his wallet.
The film then picks up defendant from another camera which shows him with his wallet in his hand as he passes within a few feet of what appears to be a cash register. However, it should be noted that the testimony was that a patron may pay for merchandise anywhere in the store. In addition, although defendant was heading in the direction of the Plaza Drive exit door, it was brought out on cross-examination that an elevator used by customers was located immediately before the exit door.
Current jurisprudence states that it is not necessary for goods to actually be removed from the store in order to form the basis of a conviction for theft. State v. Victor, 368 So.2d 711 (La.1979) (“taking” means an intent to usurp or negate the owner’s dominion); State v. White, 404 So.2d 1202 (La.1981); State v. Brown, 481 So.2d 665 (La.App. 1st Cir.1985) (exercise of wrongful dominion or unauthorized control), writ denied, 488 So.2d 198 (La.1986); State v. French, 538 So.2d 1117 (La.App. 5th Cir.1989), writ denied, 543 So.2d 18 (La.1989). Flight may be one factor indicating an intent to permanently deprive. See State v. Butler, 521 So.2d 683 (La.App. 1st Cir.1988).
In Victor, supra, the defendant was convicted of theft because he removed a terrarium and placed in its box a television set. The defendant then had his daughters take the box to the cash register. The clerk, however, looked inside the box and saw the television set. In White, supra, the defendant hid rings underneath a box on the counter and was subsequently convicted of theft. In Brown, supra, the defendant was convicted of theft after the evidence revealed-that he concealed two guns underneath his clothing. In French, supra, the defendant was convicted of attempted theft when it was shown that the defendant concealed a dress inside a clothing bag which the defendant obtained from a different store. Thus, while it is true that one need not carry goods off of the premises in order to be convicted of theft, some action must be taken from which the intent to permanently deprive can be inferred, such as those actions described in R.S. 14:67.10.
One case has facts similar to this case. In State v. Butler, supra, the defendant was convicted of theft of a videocassette recorder from a department store. One of the clerks employed by the store testified that she saw the defendant walk towards a back door which was not used for public access. The defendant was carrying a boxed videocassette recorder. The clerk yelled at the defendant to stop, which alerted the store manager. The defendant put the box on top of a nearby washing machine and ran out of the door. The defendant was caught in the parking lot and initially told the employees that he had entered the store to use the restroom facilities. He then stated that he could take the recorder because there were so many in the store and that he could not be charged with an offense because the recorder had not been removed from the store. The defendant subsequently confessed that he had heard it was possible to take merchandise from the store through the back door, and decided to try it.
*1332 The appellate court reviewed the sufficiency of the evidence and found that all elements of theft had been proven. The defendant argued that the State failed to prove a “misappropriation or taking” occurred. The court, however, responded by stating that:
The fact that the merchandise was not removed from the store, or even from the general area in which it was kept, is not controlling. State v. Brown, 481 So.2d 665 (La.App. 1st Cir.1985), writ denied, 488 So.2d 198 (La.1986). The intent to permanently deprive may have been properly inferred from the facts and circumstances of defendant’s actions, including his use of a private door and flight from the store, his statements to the Bogalusa police officers admitting that he intended to take the merchandise, and his remarks to Ms. Cel-fau and Ms. Smith, evidencing guilty knowledge.
Butler, 521 So.2d at 686.
Viewing the evidence in a light most favorable to the prosecution, we believe the evidence was sufficient to establish beyond a reasonable doubt that defendant Michael Gaidos did exercise dominion and control over the tool set, and thereby effect a taking of that merchandise, without the consent of Sears, and with the intent to permanently deprive Sears of that merchandise.
For the foregoing reasons we affirm defendant’s conviction and sentence.

AFFIRMED.

. The video footage of defendant begins at approximately 3:16:24 p.m. on May 19, 1992, as denoted by the video camera clock reflected in the upper left hand corner of the video tape. ■