899 So.2d 702 (2005)
STATE of Louisiana
v.
Joseph BEAN
No. 2004 KA 1527.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
Rehearing Denied May 11, 2005.
*704 Doug Moreau, District Attorney, Kory J. Tauzin, Assistant District Attorney, Baton Rouge, for State of Louisiana.
J. Rodney Messina, Baton Rouge, for Defendant-Appellant Joseph Bean.
Before: PARRO, KUHN, and WELCH, JJ.
*703 PARRO, J.
The defendant, Joseph Bean, was charged by bill of information with three counts of theft of goods (value of $500 or more on each count), violations of LSA-R.S. 14:67.10. The defendant entered a plea of not guilty as to each count and waived his right to a trial by jury. After a bench trial, the defendant was found guilty as charged as to counts one and two and not guilty as to count three. The defendant stipulated to the petition to establish habitual offender status and was adjudicated a second felony offender. As to count one, the defendant was sentenced to four years of imprisonment at hard labor. As to count two (enhanced pursuant to the habitual offender adjudication), the defendant was sentenced to five years of imprisonment at hard labor. The sentences were ordered to be served concurrently. The trial court denied the defendant's motion to reconsider sentence. A second motion to reconsider sentence filed by the defendant was also denied by the trial court.
The defendant now appeals, arguing that the evidence was insufficient to support the convictions. We affirm the defendant's conviction and sentence as to count one, and affirm the conviction, the habitual offender adjudication, and the sentence imposed in count two.

FACTS
With respect to count two, on or about July 11, 2001, at approximately 10:23 p.m., the defendant and an unknown co-perpetrator began lingering in the electronics department of the Super K-Mart, located on Millerville Road in Baton Rouge, Louisiana. The store had received seven Hewlett-Packard computers on that date and placed them on display in front of the electronics department. Mike Fontenot, loss prevention manager of the Super K-Mart, positioned a camera that would record the vicinity of the computer display.
At approximately 10:34 p.m., the defendant and the co-perpetrator selected a Hewlett-Packard computer and placed it in their shopping cart. Both subjects then walked away from the shopping cart but remained in the store. Minutes later, the co-perpetrator returned to the electronics department and observed the computers that remained on display. Both subjects continuously loitered in or near the electronics department. The co-perpetrator retrieved the shopping cart that contained the computer and began pushing it around. According to Randall Harrison, the clerk of the electronics department at that time, the defendant and the co-perpetrator inquired about the computer and seemed very interested in it. Ultimately, Harrison removed the computer from the shopping *705 cart and placed it back on display. Harrison's shift ended at 11:00 p.m. and at approximately that time, he closed his register in preparation for his departure. The defendant followed Harrison as he walked back and forth through the area before his departure.
The co-perpetrator returned to the electronics department after Harrison's departure and again removed a Hewlett-Packard computer from the display area and placed it into a shopping cart. After walking around the vicinity of the shopping cart and monitoring the area, the co-perpetrator placed the computer back on display and walked away from the area. Moments later, the defendant and the co-perpetrator returned to the electronics department. The defendant removed one of the computers and placed it on the floor next to their shopping cart. Both subjects then walked away from the area. The co-perpetrator returned to the shopping cart, placed the computer inside of it, and again walked away from the cart. After the defendant and the co-perpetrator paced in and out of the area for several minutes, the co-perpetrator (at approximately 11:19 p.m.) pushed the shopping cart containing the computer out of the electronics department.
The next morning, Harrison noticed that one of the computers that had been placed on display was no longer there and informed Fontenot of his observation. Fontenot utilized a scanning system, referred to as a remote unit or RMU, to determine the exact number of computers that should be present in the store and the number that were sold. According to the RMU, seven computers should have been in the store. Fontenot also checked the sales transacted on the store cash registers. He concluded that the computer had not been purchased. An attempt to locate the missing computer in the store was unsuccessful. Harrison and Fontenot reviewed the computer display area surveillance tape from the night before. They observed what appeared to be a white box in a shopping cart, as it was being pushed through the south exit of the store at approximately 11:20:26 p.m. According to Fontenot's testimony, he further reviewed the surveillance tape of that moment (consisting of a time lapse system) from the camera facing the south exit. The view of the south exit camera only allowed the observation of the back of individuals as they exited the store. Fontenot observed two individuals exiting the store with a computer box in a shopping cart. He indicated that the two individuals were the same individuals whom he viewed loitering around the electronics department and computer display and ultimately loading a computer into a shopping cart. The value of the missing Hewlett-Packard computer was $799.
With respect to count one, on or about September 25, 2001, John Trahan, Jr., a Super K-Mart loss prevention associate at the time, entered the store camera surveillance room at approximately 10:30 p.m. and began observing the defendant on the monitor in the electronic department (the same location as in count two). The defendant began loading several DVD movies into a large container positioned in his shopping cart. Trahan called the East Baton Rouge Parish Sheriff's office and informed the dispatcher of the events in progress. Deputy Stephen Hill and Corporal Lari Sequin of the East Baton Rouge Parish Sheriff's office were immediately summoned to the Super K-Mart store.
The defendant proceeded to the CD section and loaded several CDs into the container. The defendant went back to the DVD section and loaded several more DVDs into the container. He placed the top on the container, walked out of the *706 electronics department, proceeded to the rear of the store, walked across other store departments, and proceeded towards the grocery exit of the store. The defendant stopped near the cosmetics department, removed the container from the shopping cart, and placed it over a fence, beyond the E-A-S pedestals.[1] The defendant then walked to the vestibule area of the store. Moments later, the defendant exited the store and was immediately detained by Hill and Sequin. The defendant was escorted to the loss prevention office. The defendant did not cooperate with the officers' attempts to determine his identity. The defendant was arrested based on several charges, including two counts of theft (one based on count two as detailed above), felony theft (this incident, count one), and resisting an officer. Upon conducting a storage inventory search of the defendant's vehicle, the officers recovered two forms of identification for the defendant (one with the correct name and one with a different name and social security number). The items in the large container were valued at $1,229.01.

SUFFICIENCY OF THE EVIDENCE
In the sole assignment of error, the defendant avers that the evidence presented during the trial was insufficient to support the convictions. As to count two, the defendant argues that the state did not prove that he was the person who stole the Hewlett-Packard computer. As to count one, the defendant avers that the state failed to prove all of the elements of the crime. The defendant specifically argues that he did not have the intent to permanently deprive the merchant of any goods. The defendant notes that there was no merchandise found on his person and that he did not attempt to retrieve the container or re-enter the store prior to his detention.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. LSA-C.Cr.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, LSA-R.S. 15:438 does not establish a stricter standard of review on appeal than the rational trier of fact reasonable doubt standard. The statute serves as a guide for the trier of fact when considering circumstantial evidence. The Jackson standard of review is an objective standard for testing all the evidence, both direct and circumstantial, for reasonable doubt. See State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 55-56. The reviewing court is not permitted to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. It is not the function of an appellate court to assess credibility or re-weigh the evidence. Marcantel, 815 So.2d at 56.
In the present case, the defendant was convicted of two counts of theft of goods valued at more than $500, a violation of LSA-R.S. 14:67.10, which provides in pertinent part:

*707 A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:
(1) Intentionally conceals, on his person or otherwise, goods held for sale.
(2) Alters or transfers any price marking reflecting the actual retail price of the goods.
(3) Transfers goods from one container or package to another or places goods in any container, package, or wrapping in a manner to avoid detection.
(4) Willfully causes the cash register or other sales recording device to reflect less than the actual retail price of the goods.
(5) Removes any price marking with the intent to deceive the merchant as to the actual retail price of the goods.
(6) Damages or consumes goods or property so as to render it unmerchantable.
Thus, theft of goods consists of three elements: (a) the "misappropriation or taking of anything of value which is held for sale by a merchant," (b) either "without the consent of the merchant ... or by means of fraudulent conduct," and (c) with "intent to deprive the merchant permanently of... the subject of the misappropriation or taking."
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. LSA-R.S. 14:24. Only those persons who "knowingly participate in the planning or execution of a crime" are principals to that crime. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. The mental state of one defendant may not be imputed to another defendant. Thus, mere presence at the scene of a crime does not make one a principal to the crime. See State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427, 428 (per curiam).
Theft is a specific intent crime. State v. Johnson, 368 So.2d 719, 721-22 (La.1979). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. State v. Green, 02-883 (La.App. 5th Cir.1/28/03), 839 So.2d 286, 288, writ denied, 03-0848 (La.10/31/03), 857 So.2d 474; State v. Albert, 96-1991 (La.App. 1st Cir.6/20/97), 697 So.2d 1355, 1362. Further, specific intent is a legal conclusion to be resolved by the fact finder. Green, 839 So.2d at 288.

Count Two
As to the July 11, 2001 offense, count two, the trial court stated as follows in its oral reasons for judgment:
It was very clear to me that Mr. Bean and whoever this other person was were really toying with that computer. When I say toying with it, it was clear to me from watching that that they were looking around. They were trying to figure out who was watching them. They took it out of that basket at least two or three times. Mr. Bean actually removed it and brought it to a farther corner of the aisle and also put it in the basket. They *708 did this on two or three occasions, kept walking around the store.
It appeared to me to be sort of casing to see if anybody was watching them, but as the video unfolded, it was clear to me that after 11:00 o'clock that that computer in a box loaded in the basket exited that store within less than a minute after we saw it leave on the video. I am convinced beyond any reasonable doubt Mr. Bean was a principal to taking that computer.
In State v. Coleman, 02-0345 (La.App. 5th Cir.9/18/02), 829 So.2d 468, the court concluded the evidence in that case was sufficient to support a finding that the defendant had specific intent to commit theft and that the defendant actively participated in the commission of the theft. Thus, the court upheld the defendant's conviction as a principal to the offense of theft of goods valued between $100 and $500. The loss prevention officer had testified that the defendant handed various men's clothing items to the co-perpetrator, who then proceeded to another section of the store to conceal the items under her dress. The process of the defendant handing clothes to the co-perpetrator occurred several times. The defendant and the co-perpetrator engaged in several conversations with each other during the process.
In this case, the defendant interacted with the electronics department clerk regarding a Hewlett-Packard computer. The videotape from the surveillance camera of the computer display area clearly reveals that the defendant and the co-perpetrator were cohorts. The defendant and the co-perpetrator conversed on several instances and placed the same computer in and out of the same shopping cart several times. The subjects continuously walked away from each other and re-convened several times before the co-perpetrator ultimately pushed the shopping cart containing the computer out of the display area. Although this particular surveillance camera focused on the computer display, the south entrance/exit is partially in the rear view of the camera. The videotape reveals, approximately one minute after the co-perpetrator pushed the computer away from the electronics department, what appears to be a white box in a shopping cart being pushed out of the south exit. Fontenot reviewed the videotape from the south exit camera. Fontenot's testimony indicated that the two individuals whom he viewed on the videotape from the surveillance camera of the computer display area were the same individuals who pushed the shopping cart containing the computer out of the south exit. Harrison positively identified one of these individuals as the defendant. Harrison familiarized himself with the defendant during their interaction that night and had viewed the videotape of the computer display area surveillance camera. The defendant and the co-perpetrator did not approach the south exit from the area where the cash registers were located.
Fontenot and Harrison testified that the value of the computer was $799. Their testimony was uncontested. Moreover, the defendant does not argue that the missing computer was not stolen from the store. Rather, the defendant avers that the evidence was insufficient to prove that the defendant was the perpetrator. We disagree. Viewing the evidence in a light most favorable to the prosecution, we find the evidence was sufficient to establish beyond a reasonable doubt that the defendant was a principal to the theft of the computer. Thus, as to count two, we find no merit in the defendant's assignment of error.

Count One
As to count one, the trial court stated as follows in its oral reasons for judgment:

*709 With reference to count 1, the video is very clear. I mean, Mr. Trahan indicated that he was alerted to Mr. Bean. He was aware of what might happen, and he watched him. He zoomed in from time to time on what he did. A reasonable person cannot believe that a person would be taking and stacking and loading indiscriminately DVD's and CD's and really be intending to purchase them. There's no question in my mind that when Mr. Bean was loading those DVD's and those CD's and when he was placing them in that tote, as it was called, that it was clearly his intent to steal them.
Now, the question becomes is that enough for theft. Well, the argument has been made that he didn't get away with it. He didn't get out with it, but what he did do is he concealed them to where you couldn't tell what was in there anymore.
The statute says that an intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person, one, intentionally conceals on his person or otherwise goods that are for sale and also, three, transfers goods from one container or package to another or placing goods in any container, package, or wrapping in a manner to avoid detection.
It's clear to me from watching that video that the defendant concealed all of those CD's in this tote, and he placed it in a position that could easily be taken. He placed them in a position that was beyond the cash registers and beyond detection. I am convinced at that particular point even though he was not able to come back in and take them, at that point when he placed them there, his intent was clear, and he deprived the owner  intended to deprive the owner permanently thereof, and there was, in fact, a misappropriation or taking under section 1 and 3 of 67.10. I, therefore, find him guilty of that count as well.
The factual issue of whether there is a "taking" for purposes of a theft concerns whether the offender exerts control over the object adverse to or usurpatory of the owner's dominion. State v. Victor, 368 So.2d 711, 714 (La.1979). Under the jurisprudence, it is not always necessary for goods to actually be removed from the store in order to form the basis of a conviction for theft. State v. White, 404 So.2d 1202, 1204 (La.1981); Victor, 368 So.2d at 714-15 ("taking" means an intent to usurp or negate the owner's dominion); State v. Wilson, 30,880 (La.App. 2nd Cir.8/19/98), 718 So.2d 546, 549; State v. Brown, 481 So.2d 665, 667 (La.App. 1st Cir.1985), writ denied, 488 So.2d 198 (La.1986) (exercise of wrongful dominion or unauthorized control).
In Victor, the defendant was convicted of theft because he removed a terrarium from its box and placed a television set in the box. The defendant then had his daughters take the box to the cash register and attempt to pay only the price of the less expensive terrarium. The clerk, however, looked inside the box and saw the television set. The Louisiana Supreme Court found that the defendant's hiding the television set in the box, under the circumstances, constituted at least some evidence of a taking. The court further found that the trier of fact could conclude beyond a reasonable doubt from the evidence as a whole, not only a taking, but also an intent by it to deprive the owner permanently of the objects concealed in the terrarium box. Victor, 368 So.2d at 714.
In White, the defendant slid open a jewelry showcase, removed a display case containing seven diamond rings, and placed *710 them underneath a box from another store that he had in his possession. Having seen this transfer, the clerk challenged the defendant to return the rings, whereupon he responded, "What rings?" She then took the case away from him and telephoned authorities. The defendant fled from the store empty handed, only to be arrested a short time later. The Louisiana Supreme Court found that the defendant's secret removal of the rings from their display case and concealment of them under a box from another store was sufficient to prove the elements of misappropriation or taking. White, 404 So.2d at 1204.
In Wilson, the defendant placed a substantial quantity of merchandise in a trash can, covered it with the lid to avoid detection, and pushed the shopping cart through a closed checkout stand with the concealed goods still in the trash can. She then proceeded to the store exit without paying for the goods and pushed the shopping cart close enough to the exit to open the automatic door before store personnel stopped her. The appellate court found such conduct clearly amounted to unauthorized control of the merchandise, and the theft conviction was upheld. Wilson, 718 So.2d at 549.
In Brown, the co-manager of the department store observed the defendant as he reached over the unattended pistol display case and put two guns into his pockets. As the defendant turned in his direction, the co-manager made eye contact with the defendant and perceived that the defendant recognized his identity as a store employee. Because weapons were involved, the co-manager sought assistance, thereby abandoning his surveillance of the defendant. When a police officer arrived, the defendant was still in the store, but no longer had the guns in his possession when he was arrested. However, while the officer was still on the scene, a store employee found the two guns in a disposable roasting pan located about one hundred feet from the gun display case. This court found that "the unauthorized removal of the guns from the closed display case clearly constituted an `exercise of wrongful dominion' or `unauthorized control' of the object of the theft, satisfying the theft requirement of `misappropriation or taking."' The court further concluded that intent to permanently deprive could properly have been inferred from the facts and circumstances of defendant's actions, which included secret removal of the guns from the display case and concealment of them under his clothing. This court noted that the fact that the guns were not removed from the store, or even from the general area where they were kept, did not control. Brown, 481 So.2d at 667.
After giving close scrutiny to the cited cases and comparing those cases to the factual situation before us, we find that the only distinguishing fact in this case is that the defendant had exited the store without retrieving the merchandise when he was apprehended. However, based on the controlling jurisprudence, the defendant had already "exercised wrongful dominion" and "unauthorized control" of the objects of the theft when he concealed them in a covered container and deposited that container beyond the E-A-S pedestals where the merchandise could be removed from the store without being detected or paid for. See Brown, 481 So.2d at 667; Wilson, 718 So.2d at 549. This possession was clearly adverse to the store owner's dominion over those items. See Victor, 368 So.2d at 714. Thus, the "taking" of the goods was complete at that time. The cases also hold that it is not necessary for goods to actually be removed from the store in order for a theft to occur. Therefore, the one distinguishing fact in this casethe defendant's exit from the store without the goodsis *711 not relevant under the jurisprudence, which we are constrained to follow.
Furthermore, under the statute, the defendant's intent to permanently deprive the merchant of these objects could be inferred from his actions. See LSA-R.S. 14:67.10(A)(1) and (3). The defendant loaded over $1200 worth of DVDs and CDs (including multiple copies of some of the movies and compact discs) in a container and then covered the container. Thus, the defendant placed goods in a container in a manner to avoid detection. Before exiting the store, he placed the container in an area where it could easily be retrieved and removed from the store without sensor detection. We find this is sufficient evidence from which the trier of fact could conclude that the defendant had the specific intent to commit a theft of the goods. See Green, 839 So.2d at 288; State v. Parent, 01-50 (La.App. 5th Cir.5/30/01), 788 So.2d 685, 689. Viewing the evidence in the light most favorable to the prosecution, we find the evidence was sufficient to establish beyond a reasonable doubt that the defendant was guilty of theft of the DVDs and CDs.

CONCLUSION
For the reasons assigned, we affirm the defendant's conviction and sentence as to count one; with reference to count two, we affirm the defendant's conviction, the habitual offender adjudication, and the sentence imposed.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.
NOTES
[1] The term "E-A-S pedestals" refers to electronic article surveillance pedestals that are placed at the entrances and exits. An alarm will sound if sensor tagged merchandise that has not been purchased is passed through the pedestals.